UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | : | CIVIL ACTION NO.: |
| | : | 04 12441 NMG |
| Plaintiff, | : | |
| | : | RECEIPT # _____ |
| V. | : | AMOUNT $ 150 |
| | MAGISTRATE JUDGE Dein | SUMMONS ISSUED N/A |
| JPMORGAN CHASE BANK, | : | LOCAL RULE 4.1 _____ |
| | : | WAIVER FORM _____ |
| Defendant. | : | NOVEMBER MCF ISSUED _____ |
| | | BY DPTY. CLK. TOM |
| | | DATE 11/18/04 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446 and Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, the defendant, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A. ("Chase"), removes this action to the United States District Court for the District of Massachusetts, Eastern Division. Chase respectfully submits the following as grounds for removal:

1.      Chase is the defendant in a civil action commenced by the plaintiff, The Stop & Shop Supermarket Company, LLC ("Stop & Shop"), in the Commonwealth of Massachusetts, Superior Court Department of the Trial Court, Norfolk County.

2.      Chase received a copy of the Complaint and Jury Demand, dated October 21, 2004 ("Compliant"), from Stop & Shop, thereby receiving notification of the action.

3.      There is complete diversity of citizenship of the parties because:

      a.     Stop & Shop is a Delaware corporation with a principal place of business at 1385 Hancock Street, Quincy, Massachusetts;

      b.     Chase is a national banking association with a principal place of business in New York, New York; and

      c.     More than $75,000.00, exclusive of interest and costs, is in controversy in this action.

This Court would have original subject matter jurisdiction over this action under the provisions of 28 U.S.C. § 1332 if the action had originally been brought in federal court. Removal is therefore proper pursuant to 28 U.S.C. § 1441(a).

      4.     Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because none of the parties in interest properly joined and served as a defendant is a citizen of the Commonwealth of Massachusetts, the state in which the action was brought.

      5.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of the service or receipt by Chase of the Complaint filed by Stop & Shop and within one (1) year of the commencement of the action.

      6.     A true and correct copy of the Complaint is attached hereto as Exhibit A. No other process, pleadings, or orders have been served on Chase as of the date of this filing.

Dated:  November 17, 2004
        Hartford, Connecticut

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
JPMORGAN CHASE BANK,

By: _____
      Thomas J. Finn
      (BBO # 561346)
      McCARTER & ENGLISH LLP
      CityPlace I
      185 Asylum Street
      Hartford, Connecticut 06103
      Tel: 860.275.6700
      Fax: 860.724.3397

## <u>CERTIFICATION</u>

This is to certify that on this 17th day of November, 2004, a copy of the foregoing was mailed, postage pre-paid, to:

Frank J. Bailey, Esq.
James W. Matthews, Esq.
Anthony L. DeProspo, Jr., Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, MA  02110

 Counsel for Plaintiff

Thomas J. Finn

HARTFORD: 626573.01

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT

|  |  |
|---|---|
| THE STOP & SHOP SUPERMARKET COMPANY LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 04 01745 |
| v. ) | |
| JP MORGAN CHASE BANK, ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

### Nature of the Action

1.     Plaintiff The Stop & Shop Supermarket Company LLC ("Stop & Shop") brings this action for damages arising out of Defendant JP Morgan Chase Bank's ("Chase") intentional and willful failure to vacate retail space located at Copps Hill Plaza, Ridgefield, Connecticut (the "Premises"). At all relevant times, Stop & Shop also occupied space at the Premises. Chase's conduct interfered with Stop & Shop's planned expansion project, and caused Stop & Shop to incur thousands of dollars in damages in extra construction costs and lost profits.

### Parties

2.     Plaintiff The Stop & Shop Supermarket Company LLC is a Delaware corporation with its principal place of business at 1385 Hancock Street, Quincy, Norfolk County, Massachusetts.

3.     Upon information and belief, Defendant JP Morgan Chase Bank is a New York Banking Corporation with its principal place of business in New York City, New York.

## Facts

### Chase's Tenancy at the Premises

4.     On or about December 3, 1992, the predecessors-in-interest to Chase and Ridgefield Properties LLC ("Ridgefield") entered into a lease for retail space at the Premises (the "Chase Lease"). Chase operated a branch bank location.

5.     Pursuant to the terms of the Chase Lease, Chase's tenancy expired on December 31, 2002. The Chase Lease did not provide any option for renewal by Chase.

### Stop & Shop's Tenancy at the Premises

6.     In 1970, Stop & Shop's predecessor-in-interest commenced retail operations at the Premises. Stop & Shop operated and continues to operate a supermarket on approximately 30,080 square feet of retail space.

7.     On or about October 26, 2001, Stop & Shop, as tenant, and Ridgefield, as landlord, entered into an Amended and Restatement of Lease regarding Stop & Shop's leasehold at the Premises (the "Stop & Shop Lease").

8.     At the time the parties entered into the Stop & Shop Lease, a Genovese Drugstore ("Genovese") operated in retail space located directly adjacent to Stop & Shop ("Building A"). Several other retail businesses also operated at the Premises in a separate structure located in front of and to the left of Stop & Shop ("Building B"). Chase operated its banking branch in another separate structure located in front of Building B ("Building C").

9.     The Stop & Shop Lease contemplated an expansion of Stop & Shop's retail space to 65,125 square feet and a reconfiguration of the Premises (the "Expansion Project"). Stop & Shop agreed to reimburse Ridgefield for a portion of the construction costs and to pay Ridgefield an

-2-

increased rent (based upon Stop & Shop's increased store size) upon completion of the Expansion Project.

10.     As originally planned, the Expansion Project involved the following:  Stop & Shop would expand into the space occupied by Genovese in Building A.  Building B would be demolished and rebuilt to accommodate existing tenants.  Building C would also be demolished and rebuilt to house a refurbished Genovese location.  Chase, along with several other retail tenants, would be relocated to other retail spaces on the Premises.

11.     Pursuant to the terms of the Stop & Shop Lease, the Lease term would not begin until Ridgefield could deliver to Stop & Shop occupancy of the former Genovese space in Building A.  Genovese would not agree to surrender its Building A space until it could take occupancy of its new space in the former Building C location.  The new Genovese location could not be completed until Chase vacated Building C.

12.     As early as December 1999, Chase knew and fully understood that completion of the Expansion Project was contingent upon Chase's timely departure from Building C.  Chase also knew that construction of Stop & Shop's expanded store could not begin until Ridgefield completed construction of Genovese's new location.

13.     Stop & Shop understood that Chase's Lease expired on December 31, 2002.  Based upon Chase's anticipated vacancy of Building C on or before December 31, 2002, Stop & Shop expected to commence expansion no later than April 15, 2003.

### Ridgefield's Failed Negotiations with Chase

14.     Stop & Shop and Ridgefield desired to begin the Expansion Project as soon as possible.  Accordingly, Ridgefield attempted to negotiate an early termination of the Chase Lease.

15.     In April 2001, Chase informed Ridgefield that it would relocate to retail space off the Premises. Ridgefield offered to pay Chase's new landlord $50,000 as an inducement if Chase vacated the Premises by February 15, 2002. Chase did not relocate at that time.

16.     In May 2001, Ridgefield offered Chase temporary space on the Premises in a trailer, with the right to relocate into another building upon completion of the Expansion Project. Chase rejected the proposal.

17.     Thereafter, Ridgefield and Chase discussed several options for Chase to remain on the Premises. Ridgefield also offered to assist Chase in locating new space off the Premises. Chase rejected all of Ridgefield's proposals.

18.     On or about August 23, 2002, Chase's counsel sent Ridgefield a draft lease which provided for Chase's continued tenancy on the Premises. Despite Ridgefield's request to do so, Chase failed to pursue the negotiation or execution of the proposed lease. On October 21, 2002, Chase informed Ridgefield that Chase was pursuing tenancy off the Premises and that it did not intend to negotiate further with Ridgefield.

19.     As of October 21, 2002, Stop & Shop and Ridgefield expected that Chase would vacate the Premises at the expiration of the Chase Lease on December 31, 2002.

### Commencement of the Expansion Project

20.     Throughout 2002, the Building B tenants vacated the Premises. Stop & Shop paid certain tenants to vacate the Premises prior to the expiration of their respective leases. Pursuant to its agreement with Ridgefield, Stop & Shop also compensated Ridgefield for rents lost as a result of the Building B tenants' early departure from the Premises. Stop & Shop's obligation to reimburse Ridgefield for lost rents continued up until the time the former Building B tenants were relocated and operating.

21.    By summer 2002, Building B was vacant, and Ridgefield commenced demolition shortly thereafter. In the autumn of 2002, Ridgefield commenced construction of the new Building B as well as the new Genovese building.

22.    Because the new Genovese building encroached upon the space occupied by Chase, Ridgefield could not complete construction of the new Genovese building until Chase vacated the Premises. Consequently, and in anticipation of Chase's December 31, 2002 departure, Ridgefield constructed as much of the new Genovese building as possible without disrupting Chase's business.

### Chase's Interference with the Expansion Project

23.    In October 2002, Ridgefield informed Chase that it expected Chase to honor the terms of the Chase Lease and vacate the Premises on or before December 31, 2002. Ridgefield specifically informed Chase that Chase's holding over at the expiration of the Lease term would jeopardize the timely completion of the Expansion Project and delay Stop & Shop's planned expansion.

24.    By letter dated November 8, 2002, Chase acknowledged that the Chase Lease expired on December 31, 2002 and informed Ridgefield that it had found retail space off the Premises.

25.    By letters to Chase dated November 22, 2002, December 6, 2002, December 9, 2002 and December 13, 2002, Ridgefield reiterated its position that Chase was expected to vacate the Premises on or before December 31, 2002 and that Ridgefield would not renew the Chase Lease or permit a holdover.

26.    On December 19, 2002, Chase informed Ridgefield that it did not intend on vacating the Premises by December 31, 2002. Chase remained on the Premises after December 31, 2002.

27.    Chase's failure to vacate timely the Premises constituted a breach of the Chase Lease.

28.    Ridgefield was forced to bring an eviction action against Chase in Connecticut Housing Court (Danbury Housing Session, Docket No. SP 03-11036). Ridgefield and Chase

subsequently entered into a Stipulation for Summary Process Judgment whereby judgment for possession entered in favor of Ridgefield, with a stay of execution to May 27, 2003.

29.   Chase vacated the Premises on May 23, 2003, almost five months after the expiration of the Chase Lease.

### The Delay in Stop & Shop's Expansion

30.   Ridgefield began demolition of the Chase bank building immediately following Chase's departure.

31.   As a direct result of Chase's holding over, Ridgefield was unable to complete the new Genovese building until July 2003.  Genovese did not vacate its Building A space until August 1, 2003.

32.   Although Stop & Shop had planned to commence expansion on April 15, 2003, the earliest Stop & Shop could begin its expansion into the former Genovese space was August 4, 2003. Chase's holding over caused a construction delay of 111 days.

33.   Stop & Shop sustained 111 days in lost profits.

34.   Stop & Shop reimbursed Ridgefield an additional 111 days for lost rents incurred as a result of the departure of the former Building B tenants.

35.   Stop & Shop incurred additional construction costs as a result of Chase's presence on the Premises after December 31, 2002.

### Count I
### (Tortious Interference with Business Expectancies)

36.   Stop & Shop repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 though 35 as if fully set forth herein.

37.   Stop & Shop and Ridgefield had a business relationship whereby Ridgefield served as Stop & Shop's landlord.  Stop & Shop agreed to reimburse Ridgefield for a portion of the

Expansion Project's construction costs. Ridgefield agreed to provide Stop & Shop with increased retail space at the Premises upon completion of the Expansion Project.

38.    The Expansion Project could not be completed until Chase vacated the Premises. Stop & Shop could not commence expansion of its renovated store until approximately four and one-half months after Chase vacated the Premises.

39.    Chase knew and fully understood that completion of the Expansion Project was contingent upon Chase's vacating the Premises. Chase also knew and fully understood that Stop & Shop could not begin expansion of its store until Chase vacated the Premises.

40.    Chase misrepresented its intentions with regard to its tenancy at the Premises.

41.    Chase intentionally and improperly held over at the end of its lease term to interfere with the Expansion Project.

42.    Chase's holding over was improperly motivated by personal benefit and to pressure Ridgefield into acquiescing to a renewed tenancy on terms favorable to Chase.

43.    As a result of Chase's knowing and willful misconduct, Stop & Shop suffered actual damages.

### Count II
#### (Violation of Connecticut Unfair Trade Practices Act)

44.    Stop & Shop repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 though 43 as if fully set forth herein.

45.    Chase was engaged in the conduct of trade and commerce at all times relevant to this Complaint.

46.    Chase's conduct constitutes unfair and deceptive acts or practices in the conduct of trade or commerce in violation of C.G.S.A. § 42-110b.

47.     As a direct result of Chase's conduct, Stop & Shop has sustained damages and is entitled to actual damages, punitive damages and attorney's fees.

### Count III
### (Violation of G.L. c. 93A)

48.     Stop & Shop repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 though 47 as if fully set forth herein.

49.     Chase was engaged in the conduct of trade and commerce at all times relevant to this Complaint.

50.     Chase's conduct constitutes unfair and deceptive practices or acts in the conduct of trade or commerce in violation of G.L c. 93A, §§ 2 and 11.

51.     Chase's unfair and deceptive acts and practices were knowing and willful.

52.     As a result of Chase's violation of G.L. c. 93A, Stop & Shop has sustained injury and is entitled to recover damages, including multiple damages and attorneys' fees.

### JURY DEMAND

Stop & Shop demands a jury trial on all issues so triable in this matter.

WHEREFORE, Plaintiff The Stop & Shop Supermarket Company LLC prays that the Court:

1.     Enter judgment in favor of Stop & Shop on all Counts contained herein in an amount to be determined at trial;

2.     Award Stop & Shop punitive damages under C.G.S.A. § 42-110g;

3.     Award Stop & Shop multiple damages under G.L. c. 93A;

4.     Award Stop & Shop prejudgment interest at the statutory rate;

5.     Award Stop & Shop its reasonable attorney's fees and costs to the extent allowed by law; and

6.     Award Stop & Shop such other and further relief as the Court may deem just and proper.

October 21, 2004

Respectfully submitted,

THE STOP & SHOP SUPERMARKET
COMPANY LLC,

By its attorneys,

Frank J. Bailey (BBO# 026485)
James W. Matthews (BBO# 560560)
Anthony L. DeProspo, Jr. (BBO# 664668)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) The Stop & Shop Supermarket Company LLC
   v. JPMorgan Chase Bank

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   ___   V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?
                                                    YES ☐      NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?  (SEE 28 USC §2403)
                                                    YES ☐      NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                    YES ☐      NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?
                                                    YES ☐      NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                    YES ☐      NO ☒

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION ☐        CENTRAL DIVISION ☐        WESTERN DIVISION ☐

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
        GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION ☒        CENTRAL DIVISION ☐        WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Thomas J. Finn
ADDRESS  McCarter & English LLP,  CityPlace I, 185 Asylum Street, Hartford, CT 06103
TELEPHONE NO.  (860)- 275-6700

(AppendixC.wpd - 11/27/00)

&#8733;JS 44    (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

THE STOP & SHOP SUPERMARKET CO. LLC

### DEFENDANTS

JPMORGAN CHASE BANK

(b) County of Residence of First Listed Plaintiff **Norfolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **New York**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Frank J. Bailey, Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, Ma 02110  (617) 646-2000

Attorneys (If Known)
Thomas J. Finn
McCarter & English LLP
CityPlace I, 185 Asylum Street
Hartford, CT  (860) 275-6700

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgement | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Sections 1441 and 1446 – Removal; 28 U.S.C. Section 1332 – Diversity Jurisdiction

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** over $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE

DOCKET NUMBER

DATE
November 17, 2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____