

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | : | CIVIL ACTION NO.: 04 CV 12441 (NMG) |
| Plaintiff, | : : | |
| V. | : : | |
| JPMORGAN CHASE BANK, | : : | |
| Defendant. | : | NOVEMBER 23, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE

McCARTER & ENGLISH LLP
Thomas J. Finn
(BBO # 561346)
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Tel: 860.275.6700
Fax: 860.724.3397

## INTRODUCTION

The defendant, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A. ("Chase"), submits this Memorandum of Law in Support of its Motion to Dismiss or Alternatively to Transfer Venue, dated November 23, 2004.

Chase moves to dismiss the Complaint and Jury Demand, dated October 21, 2004, filed by the plaintiff, Stop & Shop Supermarket Company LLC ("Stop & Shop"), in its entirety on the grounds that this action is barred by the First Filed Rule. The strong presumption in favor of allowing a controversy to be adjudicated in the forum in which it was first filed is well settled in the absence of any special circumstances or balance of conveniences that would justify giving priority to the instant second-filed action. Additionally, there is no connection between the District of Massachusetts and the issues involved in this litigation as the operative facts giving rise to Stop & Shop's claims occurred exclusively in Connecticut. As such, Stop & Shop's purpose for commencing this second suit in Massachusetts appears to be based solely on its desire to secure a more convenient forum in which to litigate its claims. However, this conduct is precisely the type of conduct barred by the First Filed Rule. Accordingly, Chase submits that this action should be dismissed in favor of the prior pending action in Connecticut.

Alternatively, in the event the Court concludes that dismissal is not warranted, Chase requests that this action be transferred to the United States District Court for the District of Connecticut ("District of Connecticut") for resolution. The District of Connecticut is a substantially more convenient forum than the present forum. Also, the important public interest of judicial economy dictates that this action should be transferred to the District of Connecticut in order that the claims of all parties involved may tried in one action.

**FACTS**

**Background**:

This action arises out of the same facts and circumstances already at issue in two matters currently pending before the District of Connecticut. Chase originally commenced an action against Ridgefield Properties LLC ("Ridgefield Properties") and Samuels & Associates Management, LLC ("Samuels") in the District of Connecticut as a result of Ridgefield Properties' attempted eviction of Chase from its location at the Copps Hill Plaza, located in Ridgefield, Connecticut (the "Premises"), where Chase had operated a retail banking branch (the "Ridgefield Branch") for over ten years. See Amended Complaint, dated January 8, 2003 (attached to the Motion to Dismiss or Alternatively to Transfer Venue, dated November 23, 2004 ("Motion") as Exhibit 1).

In or about December 1992, the parties' predecessors in interest entered into a lease agreement for the use and occupancy of the Premises, the term of which was to expire on December 31, 2002. As early as December 1999, Chase commenced discussions with Ridgefield Properties and Samuels, acting as Ridgefield Properties' agent, regarding Chase's continued tenancy at the Copps Hill Plaza (the "Plaza") after the expiration of the Lease term. See Amended Complaint at ¶ 13. During these discussions, Chase ceased exploring alternative locations and signed a letter of intent with Ridgefield Properties in reliance upon Ridgefield Properties and Samuels' affirmative representations that, should Chase remain at the Plaza, they

3

would work to obtain approval from the requisite municipal authorities for a drive-through teller window at the Plaza for use by Chase.[1]  See Amended Complaint at ¶¶ 15, 19.

Notwithstanding their representations, however, Ridgefield Properties and Samuels ultimately informed Chase that it would not seek to obtain a drive-through teller window for Chase's Ridgefield Branch.  See Amended Complaint at ¶ 21.  As such, Chase was left with just four (4) months prior to the expiration of the Lease term to identify, lease or purchase, and prepare an alternative location with a drive-through teller window for its Ridgefield Branch -- an extremely detrimental position as Ridgefield is a small and lightly developed Connecticut community.  See Amended Complaint at ¶ 21.  Through diligent efforts, Chase located an alternative location for its Ridgefield Branch and worked expeditiously to prepare that location.  However, various environmental issues required remediation and thus hindered Chase's progress at the new location.  See Amended Complaint at ¶ 24.  Due to circumstances beyond its control, Chase was therefore unable to vacate the Premises by the expiration of the Lease's term.[2]  Chase ultimately vacated the Premises on May 29, 2003.

**The Original Action**

Upon the expiration of the Lease term, Ridgefield Properties improperly sought to evict Chase, claiming that Chase was not entitled to holdover at the Premises and further claimed to be damaged by the holdover because it allegedly delayed Ridgefield Properties' planned reconstruction of the Plaza.  Given the irreparable harm that Chase would have incurred and the extreme disruption of business that would have resulted if Chase were unable to remain at the

---

[1] The Plaza was zoned for only one drive-through window which Ridgefield Properties and Samuels chose to assign to Eckerd's Drug Store, despite the fact that Chase had operated the one allotted drive-through at the Plaza for the previous eight years.  See Amended Complaint at ¶ 16.

[2] Pursuant to Article 34 of the Lease, Chase was excused from its obligation of vacating the Premises.  See Lease at Art. 34 (attached to Amended Complaint as Exhibit A).  Indeed, Chase provided, and Ridgefield Properties accepted, a monthly rental payment of 1.5 times the Fixed Annual Rent for those months Chase held-over in accordance with the Lease provision providing for said holdover tenancy.  See Lease at §§ 18.01-.02.

4

Premises until it could relocate the Ridgefield Branch, Chase filed the action entitled <u>JPMorgan Chase Bank v. Ridgefield Properties LLC, et al</u>, 3:02 CV 2266 (AWT) in the District of Connecticut (the "Original Action").[3] Specifically, the Original Action seeks declaratory relief that Chase was justified and entitled to remain on the Premises as a result of factors out of its control. <u>See</u> Amended Complaint at First Claim for Relief through Fifth Claim for Relief. Through the Original Action, Chase further seeks to recover legal damages arising from Ridgefield Properties and Samuels' improper conduct during lease negotiations and for losses sustained as a result of the business disruption caused by the construction and demolition performed in the Plaza around the Premises. <u>See</u> Amended Complaint at Sixth Claim for Relief through Seventh Claim for Relief.[4]

**<u>Stop & Shop's Demands and Resulting Litigation</u>**

On January 22, 2004, Stop & Shop made a demand for damages on Chase for injuries it purportedly suffered as a result of Chase's holdover at the Premises. <u>See</u> Correspondence from Frank J. Bailey, Esq. to the plaintiff, JPMorgan Chase Bank, dated January 22, 2004 ("Demand Letter") (attached to the Motion as Exhibit 2). Stop & Shop claimed that it was prevented from commencing construction of a renovation and expansion of the supermarket it operates at the Plaza. Its purported damages included "lost profits, higher construction costs, higher rent, and additional financing expenses." Demand Letter at 2.

By way of the Court's endorsement order dated January, 13, 2004, the Original Action was stayed pending mediation of the parties' claims. Stop & Shop also participated in some of

---

[3] Chase originally filed this action on December 20, 2002, which Complaint was amended as of right on January 8, 2003, in accordance with Rule 15(a) of the Federal Rules of Civil Procedure.

[4] On August 11, 2003, Ridgefield Properties filed a Counterclaim against Chase asserting causes of action for breach of the Lease, tortious interference, and violation of the Connecticut Unfair Trade Practices Act. <u>See</u> Defendants' Answer and Affirmative Defenses to Amended Complaint and Counterclaim by Ridgefield Properties LLC, dated August 11, 2003.

5

these discussions. However, despite the parties' efforts, they were unable to reach a resolution. Accordingly, during a status conference with the Court on October 20, 2004, Chase, through its counsel, requested that the stay be lifted in order to proceed with the matter, which request the Court took under advisement. Stop & Shop's demand for damages created a justiciable controversy which arose directly out of the circumstances and holdover tenancy at issue in the Original Action. Also, Stop & Shop's demands further prohibited any potential resolution of the dispute between Chase and Ridgefield Properties and Samuels as Chase could not resolve the claims in the Original Action without also accounting for Stop & Shop's claims as well. Accordingly, Chase commenced a declaratory judgment action against Stop & Shop entitled, JPMorgan Chase Bank v. Stop & Shop Supermarket Co., 3:04 CV 1763 (AWT), currently pending before the District of Connecticut (the "Connecticut Action").[5] See Complaint, dated October 20, 2004 (attached to the Motion as Exhibit 3).

The next day, on October 21, 2004, Stop & Shop filed the Complaint and Jury Demand, dated October 21, 2004 ("Complaint"), in the Commonwealth of Massachusetts Superior Court Department of the Trial Court, Norfolk County. Chase removed the action to this Court pursuant to 28 U.S.C. § 1446 on November 18, 2004. See Notice of Removal, dated November 17, 2004.

## ARGUMENT

### I. This Court Should Refrain from Exercising Jurisdiction Over this Action and the Complaint Should be Dismissed Pursuant to the First Filed Rule

Chase submits that this case should be dismissed in accordance with the First Filed Rule. It is well settled that where two actions are pending concurrently in two federal courts, the first-filed action is generally preferred as the appropriate venue. See, e.g., Coady v. Ashcroft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st

---

[5] Chase anticipates moving to consolidate the Original and the Connecticut Actions.

6

Cir. 1987). "[W]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996). There exists a strong presumption in favor of allowing the controversy to be adjudicated in the forum in which it was first filed.[6] See Feinstein v. Brown, 304 F. Supp. 2d 279, 283 (D.R.I. 2004); see also Agukem Caribe, Inc. v. Kemiron Atlantic, Inc., 218 F. Supp. 2d 199, 203 (D.P.R. 2002) (noting that case law "strongly favor[s] the forum where suit was first-filed"). This preference for the first-filed action serves to avoid duplicative and piecemeal litigation, waste of judicial resources, and the possibility of conflicting judgments. See Coady, 223 F.3d at 11; TPM Holdings, 91 F.3d at 4.

In applying the First Filed Rule, a district court may dismiss an action in favor of a previously filed parallel action in another federal district. See J.P. Sercel Assoc. v. New Wave Research, No. 03-331, 2003 WL 22299014 (D.N.H. Oct. 7, 2003) (attached hereto as Exhibit A) (dismissing action in favor of the first-filed action); see also 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128 (S.D.N.Y. 1994) (dismissing action pursuant to the First Filed Rule). The first-filed suit will have priority unless special circumstances justify giving priority to the second action or a balance of convenience favors the second forum. See Feinstein v. Brown, 304 F. Supp. 2d 279, 283 (D.R.I. 2004); SW Indus. Inc. v. Aetna Cas. & Sur. Co., 653 F. Supp. 631, 634 (D.R.I. 1987). The plaintiff in the second suit opposing the presumed application of the First Filed Rule bears the burden of establishing any special circumstances justifying an exception to the Rule. See J.P. Sercel Assoc., 2003 WL 22299014, at *2; 800-Flowers, 860 F. Supp. at 132.

---

[6] The First Filed Rule applies regardless of whether the initial action a seeks declaratory judgment, which relief is sought in the Connecticut Action. See, e.g., Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 15 (D. Mass. 2002); GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F. Supp. 2d 99, 105 (D. Mass 2000); SW Indus. Inc. v. Aetna Cas. & Sur. Co., 653 F. Supp. 631, 636 (D.R.I. 1987).

7

The instant litigation pending before this Court must be dismissed in favor of the first-filed Connecticut Action already pending before the District of Connecticut. The claims asserted by Stop & Shop in its Complaint arise out of the exact circumstances and occurrences that gave rise to the Connecticut Action, particularly, Chase's lease of the Premises in the Plaza located in Ridgefield, Connecticut. Compare Connecticut Action with Complaint. Accordingly, dismissal of the present litigation will properly avoid otherwise duplicative litigation and waste of judicial resources.

In its Complaint, Stop & Shop alleges that it was damaged as a result of Chase's purported failure to vacate the Premises by the expiration of its lease with Ridgefield Properties, which holdover allegedly delayed the construction and expansion of its grocery store, also located in the Plaza. See Complaint at ¶¶ 1, 31-33, 35. Indeed, these allegations reiterate those asserted by Stop & Shop in its Demand Letter of January 22, 2004, pursuant to which it demanded compensation from Chase for lost profits, additional construction costs, higher rent, and additional financing expenses. See Demand Letter at 2. Through the commencement of the Connecticut Action, Chase properly seeks a declaratory judgment of the justiciable controversy created by Stop & Shop's demands for damages from Chase. See Connecticut Action at First through Third Claims for Relief. Thus, the proper course of action for Stop & Shop would have been to litigate any claims it has against Chase by asserting counterclaims in the Connecticut Action. See Fed. R. Civ. P. 13. Instead, Stop & Shop improperly filed suit one day later in the Superior Court of the Commonwealth of Massachusetts, Norfolk County, a venue which has absolutely no connection with the matter except that Stop & Shop's principal place of business is located there. See Complaint. Stop & Shop's conduct in commencing this action solely for purposes of obtaining a convenient forum directly contradicts the purpose of the First Filed Rule

as well as the provisions of the Federal Rules of Civil Procedure and should not be countenanced. As such, Chase submits that the Complaint must be dismissed.

### A. No Special Circumstances Exist that Justify Departure from the First Filed Rule

The Fist Filed Rule favors the continuance of the first-filed action unless special circumstances are present to warrant litigation to proceed in the second forum. A special circumstance that has been held to overcome the presumption of the First Filed Rule is the filing of an action solely for purposes of securing a preferred forum by "winning the race to the courthouse." See Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002). Such circumstances include situations where a plaintiff affirmatively misleads a defendant into foregoing litigation under the guise of settlement negotiations or reacts to a defendant's notice of imminent filing by "sprinting to the courthouse." See id. No such circumstances are present in this matter.

While Chase, Ridgefield Properties, and Samuels attempted to mediate the claims at issue in the Original Action, Stop & Shop demanded payment of compensation from Chase for losses purportedly incurred by Stop & Shop as a result of Chase's holdover at the premises. See Demand Letter; Connecticut Action, ¶¶ 36-37, 41-42. When the parties' efforts at mediation proved unsuccessful, Chase filed suit against Stop & Shop to seek declaratory relief so as to protect its rights. Indeed, a party "is not obligated to continue what, in [its] view, was a fruitless negotiation before coming to court." Feinstein, 304 F. Supp. 2d at 283. At no time did Chase ever misrepresent its intention to negotiate with Stop & Shop then suddenly file the Connecticut Action merely so that it could "race to the courthouse" in order to avoid an inconvenient forum. Rather, the District of Connecticut is the appropriate venue to litigate the issues raised in the

Connecticut Action as the conduct complained of, Chase's holdover at the Premises, occurred in Connecticut, and the Premises, Stop & Shop's store, and the situs of the renovation project are all located in Connecticut. See Connecticut Action at ¶¶ 1-2, 35, 36-37, 41-42; Complaint at ¶¶ 1, 6, 32, 35. Moreover, the principal parties to the dispute, Chase, Ridgefield Properties, and Samuels, were already litigating their claims before the District of Connecticut. See Original Action. As such, any claim by Stop & Shop that Chase commenced the Connecticut Action for the sole purpose of securing a convenient forum would be disingenuous and unfounded. Accordingly, as there exist no special circumstances to obviate the presumption of the First Filed Rule, the instant action should be dismissed in favor of the first-filed Connecticut Action.

### B.  Balance of Convenience Favors Litigation in the District of Connecticut

The presumption of the First Filed Rule may be overcome by demonstrating the balance of conveniences favoring the venue of the later-filed action. See Feinstein, 304 F. Supp. 2d at 283; See Holmes Group, 249 F. Supp. 2d at 17.

> In making this determination, a court may weigh a number of factors, including, (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and the location of the documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake.

Holmes Group, 249 F. Supp. 2d at 17 (citing Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000)). A balance of the conveniences in this matter does not justify departure from the First Filed Rule as they weigh heavily in favor of proceeding in the Connecticut forum.

Although a plaintiff's choice of forum is generally preferred, "this preference is inoperative in a later-filed action, where the plaintiff's claims would constitute compulsory counterclaims in the defendant's earlier-filed action." SW Indus., 653 F. Supp. at 637 (citation omitted). As previously discussed, the causes of action asserted in the Complaint arise from the

same conduct and circumstances at issue in the Connecticut Action. Compare Connecticut Action with Complaint. Thus, the causes of action asserted by Stop & Shop in the instant matter should properly have been brought by way of counterclaims in the Connecticut Action in accordance with Rule 13 of the Federal Rules of Civil Procedure. Instead, Stop & Shop commenced this action in Massachusetts, apparently for the sole purpose of attempting to secure the forum of its choice. Indeed, there is absolutely no connection between Massachusetts and the claims at issue except that Stop & Shop's principal place of business in located in Norfolk County. See Connecticut Action at ¶ 2; Complaint at ¶ 2. As such, no weight should be afforded Stop & Shop's choice of forum. See SW Indus., 653 F. Supp. at 637; see also 800-Flowers, 860 F. Supp. at 134 (holding that "a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum").

Also, consideration of the convenience of the parties and of potential witnesses favors litigation before the District of Connecticut. Although both Stop & Shop and Chase are sophisticated parties who conduct business in both Connecticut and Massachusetts, all the facts and circumstances from which the parties' dispute arose occurred in Connecticut. The Premises is located in Connecticut, Chase's conduct in holding over at the Premises occurred in Connecticut, Stop & Shop's grocery store is located in Connecticut, the purported delays in the construction and expansion of the store Stop & Shop complains of occurred in Connecticut. As such, all potential witnesses will most certainly be located in Connecticut. The location and convenience of the potential witnesses is perhaps the most important factor to consider in balancing convenience. See Home Prod. Int'l N. Am., Inc. v. PeopleSoft USA, Inc., 201 F.R.D. 42, 44 (D. Mass. 2001) (quotation omitted). Furthermore, the location of physical evidence and

documents is also a major factor for the Court's consideration. See 800-Flowers, 860 F. Supp. at 134. Accordingly, Connecticut is the most appropriate forum.

Additionally, the public interest in judicial economy is an extremely important factor for the Court to consider as well. See Holmes Group, 249 F. Supp. 2d at 18. As previously discussed, there is no connection between the Massachusetts forum and the issues involved in this litigation, except that Stop & Shop's principal place of business is located in this district. As such, it is apparent that Stop & Shop's motive in filing this second suit in the Massachusetts forum was based solely on its desire to secure a more convenient forum in which to litigate its claims. However, such conduct is precisely the type of conduct barred by the First Filed Rule. See Coady, 223 F.3d at 11 (holding the preference for the first-filed action serves to avoid duplicative and piecemeal litigation, waste of judicial resources, and the possibility of conflicting judgments); TPM Holdings, 91 F.3d at 4 (same). Judicial economy and the public interest against wasteful litigation dictate that the Connection Action and the instant action before this Court should not both proceed. Chase submits that the dismissal of this action in favor of the prior pending Connecticut Action will better serve the valuable public interest of judicial economy in that it will allow joint disposition of the claims of all the parties involved in both the Original and Connecticut Actions in one suit.[7]

The balancing of conveniences clearly weighs in favor of litigating the instant matter in the District of Connecticut in conjunction with the Original and Connecticut Actions. Accordingly, the Motion should be granted and the instant action dismissed.

---

[7] As previously set forth, Chase plans to move to consolidate the Original and the Connecticut Actions.

## II. Alternatively, This Action Should be Transferred to the District of Connecticut

In the event the Court determines that dismissal is not warranted pursuant to the First Filed Rule, this action should nonetheless be transferred to the District of Connecticut. Pursuant to 28 U.S.C. § 1404, a district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether an action should be transferred pursuant to 28 U.S.C. § 1404(a), factors the Court must consider include "the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation." Cianbro Corp., 814 F.2d at 11; see, e.g., Coady, 223 F.3d at 11; Agukem Caribe, 218 F. Supp. 2d at 201. The locus of operative facts is also an important factor to be considered. See 800-Flowers, 860 F. Supp. at 134. The decision of whether to transfer an action is within the sound discretion of the district court. See, e.g., PeopleSoft USA, 201 F.R.D. at 44; Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l Inc., 56 F. Supp. 2d 134, 141 (D. Mass. 1999).

As previously discussed, the Connecticut forum is substantially more convenient than the present forum. There is no connection between this district and the issues of this litigation. See Connecticut Action; Complaint. The operative facts at issue in this litigation occurred exclusively in Connecticut and, as such, all relevant documents and potential witnesses are located in Connecticut. Furthermore, judicial economy dictates that it is more efficient to litigate all related issues in one single action. See Kleinerman, 107 F. Supp. 2d at 125. As such, the instant action should be transferred and litigated in conjunction with the prior pending Connecticut Action. Indeed, if this action were transferred to the District of Connecticut, the claims of all the parties, not only Chase and Stop & Shop but also Ridgefield Properties and

Samuels, would be litigated and determined in one action. Accordingly, Chase submits that this action should be transferred to the District of Connecticut.

## CONCLUSION

Based on the foregoing, the defendant, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A., respectfully requests that the Court grant its Motion to Dismiss or Alternatively to Transfer Venue, dated November 23, 2004, and dismiss this action in its entirety, or in the alternative, transfer the matter to the District Court for the District of Connecticut..

Dated: November 23, 2004  
Hartford, Connecticut

RESPECTFULLY SUBMITTED,

THE DEFENDANT,  
JPMORGAN CHASE BANK,

By: _____  
Thomas J. Finn  
(BBO # 561346)  
McCARTER & ENGLISH LLP  
CityPlace I  
185 Asylum Street  
Hartford, Connecticut 06103  
Tel: 860.275.6700  
Fax: 860.724.3397

## CERTIFICATION

This is to certify that on this 23rd day of November, 2004, a copy of the foregoing was mailed, postage pre-paid, to:

Frank J. Bailey, Esq.
James W. Matthews, Esq.
Anthony L. DeProspo, Jr., Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, MA  02110

_____
Thomas J. Finn

HARTFORD: 627161.01

Westlaw.

Not Reported in F.Supp.2d
2003 WL 22299014 (D.N.H.), 2003 DNH 171
**(Cite as: 2003 WL 22299014 (D.N.H.))**

Page 1

Motions, Pleadings and Filings

NOT FOR PUBLICATION

United States District Court,
D. New Hampshire.

J.P. SERCEL ASSOCIATES, INC.
v.
NEW WAVE RESEARCH

No. Civ. 03-331-JD.

Oct. 7, 2003.

*ORDER*

DICLERICO, J.

*1 The plaintiff, J.P. Sercel Associates, Inc. ("JPSA"), brought a declaratory judgment action, with related state law claims, challenging a patent issued to the defendant, New Wave Research. New Wave moves to dismiss, stay, or transfer the action because it previously filed a patent infringement suit against JPSA in the United States District Court for the Northern District of California, asserting infringement by JPSA of the same patent. JPSA objects to New Wave's motion.

*Discussion*

Because this is a suit involving a patent, the law of the Federal Circuit governs substantive patent issues while the law of the First Circuit governs procedural issues that do not affect patent law. *See Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1382 (Fed.Cir.2002); *Madley v. Duke Univ.,* 307 F.3d 1351, 1358 (Fed.Cir.2002). The Federal Circuit has not held that transfer of venue pertains to patent such that Federal Circuit law should control. *See e.g., HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1306-07 (Fed.Cir.1999) (applying Federal Circuit law to jurisdiction discussion and Sixth Circuit law to venue discussion); *Banjo Buddies, Inc. v. Renosky,* 156 F.Supp.2d 22, 24-25 (D.Me.2001) (applying First Circuit law to transfer of venue motion in patent case); *cf. Midwest Indus. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359-60 (Fed.Cir.1999) (listing certain nonsubstantive issues held by Federal Circuit to be pertinent to patent law). However, the Federal Circuit has concluded that "[t]he proper relationship between an action under [28 U.S.C. § 2201(a) ] for a declaration of patent rights and a later-filed infringement suit triggers [its] special responsibility to foster national uniformity in patent practice." *Serco Servs. Co. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039 (Fed.Cir.1995). Therefore, district courts follow Federal Circuit precedent in considering the first-filed action rule in patent cases.  [FN1] *See SAES Getters S.p.A. v. Aeronex, Inc.,* 219 F.Supp.2d 1081, 1089 (S.D.Cal.2002).

> FN1. This case does not involve the specific issue addressed in *Genentech,* whether a first-filed declaratory judgment action will be given preference over a direct infringement suit filed later. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). Nevertheless, the court will follow the Federal Circuit's precedent for purposes of applying the first-filed rule.

New Wave asserts that because it filed the first action raising patent infringement of the disputed patent in the Northern District of California, the first-filed rule counsels that JPSA's suit in this court should be dismissed, stayed, or transferred to the Northern District of California. [FN2] New Wave also contends that New Hampshire is a forum non conveniens under 28 U.S.C. § 1404(a). In response, JPSA argues that the first-filed rule does not apply because New Wave filed suit in California "secretly" in bad faith in order to establish its own choice of venue.

> FN2. New Wave's alternative argument that JPSA's suit is improper under the Declaratory Judgment Act, 28 U.S.C. § 2201, merely repeats its argument under the first-filed rule.

When actions asserting and challenging the same patent and involving the same parties are proceeding in different federal district courts, the suit that was filed first is preferred. *Genentech,* 998 F.2d at 937. "The first-filed action is preferred ... 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.' " *Serco Servs.,* 51 F.3d at 1039 (quoting

Not Reported in F.Supp.2d
2003 WL 22299014 (D.N.H.), 2003 DNH 171
(Cite as: 2003 WL 22299014 (D.N.H.))

Page 2

*Genentech*, 998 F.2d at 937). In applying the first-filed rule, a court may stay, transfer, or dismiss an action in favor of a more appropriate parallel action in another federal district. *See R.J. Reynolds Tobacco Co. v. Star Scientific, Inc.*, 169 F.Supp.2d 452, 455 (M.D.N.C.2001).

*2 As a doctrine of comity among the federal courts, the first-filed action rule will not apply if the circumstances of the first suit suggest bad faith or if the convenience of the parties favors a different forum. *See, e.g., Serco Servs.*, 51 F.3d at 1039-40; *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12, 15 (D.Mass.2002); *Dupont Pharms. Co. v. Sonus Pharms., Inc.*, 122 F.Supp.2d 230, 231 (D.Mass.2000). In patent cases, where all appeals are heard by the Federal Circuit, less consideration is given to issues of forum shopping or an inequitable race to the court house. *Serco Servs.*, 51 F.3d at 1040. The plaintiff in the second suit bears the burden of showing compelling circumstances or sufficient inconvenience to overcome the first-filed action rule. *See Cent. States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co.*, 34 F.Supp.2d 1092, 1094 (N.D.Ill.1999); *800- Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (S.D.N.Y.1994).

JPSA contends that compelling circumstances exist here because New Wave filed its suit in California immediately after its patent issued and did not serve the complaint on JPSA. The lack of immediate service apparently is the basis for JPSA's charge that New Wave's complaint was "secretly filed." JPSA asks the court to infer from New Wave's fast action that it was forum shopping and filing its action in bad faith to preempt a suit by JPSA.

Under the federal rules, a complaint must be served within 120 days of filing. Fed.R.Civ.P. 4(m). JPSA could not and does not contend that 120 days passed without service. Otherwise, service has no effect on the first-filed action rule. *See, e.g., Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 n. 3 (9th Cir.1982); *Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962, 970 (N.D.Iowa 1999) (citing cases); *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 272 (C.D.Cal.1998) (same).

There is no dispute that the two suits involve the same parties and the same underlying issues. [FN3] Because forum shopping carries less weight in patent cases, even if New Wave's conduct supported the inference JPSA urges, that alone would not likely be enough to overcome the first-filed action rule. *See Serco Servs.*, 51 F.3d at 1040. Additional bad faith activity coupled with inconvenience to the plaintiff in the second-filed action is required to show sufficiently compelling circumstances. *See, e.g., id.; Holmes Group*, 249 F.Supp.2d at 16.

> FN3. Both suits address validity and infringement of the same patent. The New Hampshire suit also includes state law claims of unfair competition and tortious interference with business relations.

JPSA offers no evidence as to other bad faith conduct by New Wave. [FN4] With respect to the relative convenience of litigating in New Hampshire versus California, JPSA first contends, contrary to the legal standard, that convenience is not relevant. JPSA asserts that the company and the vast majority of its witnesses are located in New Hampshire. It also contends that because its accused system is located in New Hampshire, it would be inconvenient to transport the system to California for purposes of litigation there. New Wave states that it is located within the Northern District of California and that seven of the nine inventors of the disputed patent along with its employee witnesses are available there. New Wave also points out that JPSA would not have to transport its system because it has sold the accused product in northern California.

> FN4. JPSA's challenge to the merits of New Wave's suit are not sufficient, based on the present record, to invoke Federal Rule of Civil Procedure 11 or to show other bad faith conduct.

*3 Nothing in the record suggests that there is a jurisdictional question in the California proceeding that would counsel in favor of staying, rather than dismissing, this action. *See, e.g., Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 52 (1st Cir.1995). Nor has JPSA asked that its action be transferred to the Northern District of California as an alternative to dismissal. Therefore, because JPSA has not carried its burden of showing that the preference for the first-filed action, the proceeding filed by New Wave in the Northern District of California, should not govern in this case, this case is dismissed in favor of that proceeding.

*Conclusion*

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is granted. This case is

Not Reported in F.Supp.2d
2003 WL 22299014 (D.N.H.), 2003 DNH 171
**(Cite as: 2003 WL 22299014 (D.N.H.))**

Page 3

dismissed without prejudice.

The clerk of court shall enter judgment accordingly and close the case.
  SO ORDERED.

2003 WL 22299014 (D.N.H.), 2003 DNH 171

Motions, Pleadings and Filings (Back to top)

- 1:03CV00331 (Docket) (Aug. 01, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.