UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S OFFICE

2004 DEC -7 P 2: 34

U.S. DISTRICT COURT
DISTRICT OF MASS.

THE STOP & SHOP SUPERMARKET
COMPANY LLC,
   Plaintiff,

v.

JP MORGAN CHASE BANK,
   Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-12441 (NMG)

## THE STOP & SHOP SUPERMARKET COMPANY LLC'S
## MOTION TO REMAND AND OPPOSITION TO JP MORGAN CHASE BANK'S
## MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE

The Court should remand this action to Massachusetts state court because JP Morgan

Chase Bank ("Chase") removed the action prior to being served with The Stop & Shop

Supermarket Company LLC's ("Stop & Shop") state court complaint. On October 21, 2004,

Stop & Shop brought this action in Massachusetts state court. Stop & Shop never served Chase

with a complaint or summons, nor did Stop & Shop or its counsel provide Chase with a courtesy

copy of the complaint. Stop & Shop believed to do so would have been in disregard of an order

of another federal court.

Accordingly, the time for removal has not yet been triggered and this Court has no

jurisdiction over this matter. Moreover, because Chase removed this action in bad faith under

the relevant removal statute, Stop & Shop is entitled to its costs and attorneys fees in bringing

this motion to remand.

Chase's Motion to Dismiss or Alternatively to Transfer Venue (the "Motion") is therefore

premature and not properly before this Court. That notwithstanding, the Motion is wholly

without merit. The "first-to-file" rule is inapplicable to this case and Massachusetts is the proper venue for this suit. As a result, the Court should allow Stop & Shop's Motion to Remand, and deny Chase's Motion in its entirety.

## **Factual Background**

Chase's Motion is the latest in a series of sharp litigation tactics intended to take advantage of Stop & Shop's good-faith efforts to follow the direction of a federal magistrate judge and settle this matter, and deny Stop & Shop its choice of forum.

### Stop & Shop's Claims Against Chase

Stop & Shop incurred damages as a result of Chase's intentional and willful failure to vacate retail space located at Copps Hill Plaza, Ridgefield, Connecticut (the "Premises"). Stop & Shop is a major tenant at the Premises. Chase has no defense to its failure to vacate timely, except to make the absurd argument that its failure to quit was the result of "force majeure." Chase's failure to vacate the Premises interfered with Stop & Shop's planned expansion project, and caused Stop & Shop to incur thousands of dollars in damages in extra construction costs and lost profits.

### Chase's Suit Against Ridgefield Properties LLC

In 2003, Chase brought suit in federal district court in Connecticut against its landlord, Ridgefield Properties LLC ("Ridgefield"), regarding Chase's tenancy at the Premises. The parties subsequently agreed to mediate the case before Judge Magistrate Donna F. Martinez (the "Mediation"). As part of the Mediation, the Court directed a stay of all further litigation (the "Stay"). Once Stop & Shop advised Chase of its claims in January 2004, Stop & Shop agreed to participate in the Mediation in an effort to achieve a tripartite global settlement. The Stay remained in effect.

<u>Chase's Preemptive Suit Against Stop & Shop</u>

Throughout 2004, Stop & Shop participated in several Mediation sessions and negotiated in good faith. During a telephonic Mediation session held on October 20, 2004, and in an apparent unilateral attempt to abandon the Mediation, Chase requested that the Stay be lifted in order to join Stop & Shop as a party to the pending suit against Ridgefield (that too was a preemptive suit by Chase). Judge Martinez specifically declined Chase's request. Counsel for Chase also requested that Stop & Shop agree not to initiate suit against Chase. Counsel for Stop & Shop explained that Chase's failure to inform counsel of its true purpose prior to the Mediation session left counsel with no ability to discuss this intent with Stop & Shop.

At approximately 3:45 PM that afternoon, and in disregard of the Stay, Chase initiated a separate declaratory judgment suit against Stop & Shop in federal district court in Connecticut (the "Connecticut Action"). The Connecticut Action, time-stamped as received by the Court at 3:47 PM, is appended hereto as <u>Exhibit A</u>.[1] At approximately 4:00 PM, <u>after</u> Chase had already filed the Connecticut Action, Chase left a voicemail message for Stop & Shop's counsel in which Chase advised Stop & Shop that it was "going to file" an action against Stop & Shop in Connecticut.[2]

---

[1]      On November 29, 2004, Stop & Shop moved to dismiss the Connecticut Action. A copy of Stop & Shop's Memorandum in Support of its Motion to Dismiss is appended hereto as <u>Exhibit B</u>.

[2]      The full text of Chase's message is as follows:

> Hi Frank [Bailey], it's Tim Fisher, it's about 4:00 p.m. on Wednesday [October 20th]. I wanted to follow up with you on the issue that I raised towards the end of our conference call today about whether you would agree to forebear on filing suit and I understand you're out for the rest of the afternoon and James Matthews is apparently unavailable so I want to leave word with you. Since you aren't able to make a commitment on anything and I couldn't file a motion to add a party in the current action given the stay, I'm going to file a separate declaratory judgment action against Stop & Shop in federal court here in Hartford, identify the related case that we have already pending and so I wanted to give you a heads up about that. Give me a call if you want to talk about it and I can get you a quick copy of you'd like 860-275-6775. <u>See</u> Exh. B at 6.

Stop & Shop, in order to protect its rights, brought suit against Chase in Massachusetts state court the next day (the "Massachusetts Action").[3]  In respect of the Stay, and Judge Martinez's directives, Stop & Shop did not serve Chase with the Massachusetts Action Complaint.  See Exh. B at 7.

Chase's Improper Removal

On November 17, 2004, Chase removed the Massachusetts Action to this Court.  In its Notice of Removal, Chase stated as follows:

> Chase received a copy of the Complaint and Jury Demand, dated October 21, 2004 (the "Compliant") (sic), from Stop & Shop, thereby receiving notification of the action.

See Notice of Removal, appended hereto as Exhibit C at ¶ 2.  This is patently false.  Neither Stop & Shop nor its counsel have served Chase with the summons and/or complaint in the Massachusetts Action (nor even provided Chase's counsel with a courtesy copy of the complaint).  See Exh. B at 7.

Chase deliberately misled Stop & Shop when it advised Stop & Shop that it planned to commence the Connecticut Action.  As the Connecticut Action's time-stamp indicates, that Action had already been filed at the time those statements were made.  See Exh. A at 1.  In a feeble attempt to camouflage its misconduct, Chase now claims that the District of Connecticut's custom and practice is to time-stamp documents one hour *behind* the actual time of filing.  Stop & Shop has confirmed with a clerk of that Court that Chase's contention, absurd on its face, is without merit.  See Exh. B at 7.

Chase deliberately misled this Court when it filed its Notice of Removal, falsely attesting that it received from Stop & Shop a copy of the complaint filed in the Massachusetts Action.

---

[3]    Stop & Shop could not commence a new action in Massachusetts Superior Court after 4:00 PM on Monday, October 20, 2004.  Stop & Shop instead commenced the Massachusetts Action at the first available opportunity, i.e., the morning of the next business day.

Chase should not be allowed to benefit from such tactics. Stop & Shop's claims are properly

pending in Massachusetts (Chase has conceded that it is subject to personal jurisdiction in

Massachusetts), and Chase is not entitled to the declaratory relief requested in the Connecticut

Action. See Exh. B. Accordingly, the Court should remand the Massachusetts Action to state

court and deny Chase's Motion.

## ARGUMENT

The Massachusetts Action should be remanded to state court because Chase's time for

removal has not yet been triggered. A state court action can be removed only after the defendant

is formally served with process. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S.

344 (1999). Here, Chase removed the Massachusetts Action prior to being served with the

complaint and summons (or provided with a courtesy copy). Accordingly, remand is mandatory.

Moreover, because Chase removed the Action in bad faith – its Notice of Removal contains false

assertions – Stop & Shop is entitled to recover all attorney's fees and costs incurred in bringing

this motion to remand. Straus v. Straus, 987 F. Supp. 52, 55 (D. Mass. 1997).

Chase's motion to dismiss or transfer venue should be denied for at least two reasons.

First, because removal was improper, this Court has no jurisdiction over this matter. See Mills v.

Harmon Law offices, P.C., 344 F.3d 42, 45 (1st Cir. 2003). Second, even if the Court

entertained the merits of Chase's Motion (which it should not), Chase's allegations are

unfounded. Chase's manipulation of two district court dockets renders the "first-to-file" rule null

and void. See Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 22 (D. Mass. 2000)

(recognizing an exception to the "first filed" rule in situations where one party has won a race to

the courthouse by jumping the gun and filing a declaratory judgment action). As a result,

Massachusetts is the proper forum for this suit.

I.    **THE COURT SHOULD ALLOW STOP & SHOP'S MOTION TO REMAND**

    A.    **Chase Removed The Massachusetts Action Prior To**
          **Being Served With The Complaint.**

The U.S. Supreme Court has held that "[a] named defendant's time to remove [a state action] is triggered by the simultaneous service of the summons and complaint, or receipt of the complaint, … after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Murphy Bros., 526 U.S. at 344; see also Badon v. RJR Nabisco Inc., 224 F.3d 382, 390 n.12 (5th Cir. 2000) ("The 30 day [removal] period *in no event* begins to run prior to service of process on the defendant.") (emphasis added). This is because "[b]efore a … court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." Murphy Bros., 526 U.S. at 350.

Stop & Shop never served Chase with the Massachusetts Action Complaint or a summons. Therefore, Chase had no right to remove the Massachusetts Action. See Murphy Bros., 526 U.S. at 356; see also Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp., 69 F. Supp. 2d 240, 242 (D. Mass. 1999) ("As a general matter, the removal statutes are to be strictly construed.").

The plaintiff is the "master to decide what law he will rely upon … and defendants have the burden of showing the federal court's jurisdiction." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (internal citation omitted). In a obvious effort to deprive Stop &

Shop of its chosen forum, Chase removed the Massachusetts Action without being served with

the Complaint. Chase's action <u>requires</u> that this case be remanded to Massachusetts state court:

> If at any time before final judgment it appears that the district court
> lacks subject matter jurisdiction, ***the case shall be remanded***.

28 U.S.C. § 1447(c) (emphasis added). Accordingly, the Court should allow Stop & Shop's

motion to remand. <u>See Murphy Bros.</u>, 526 U.S. at 356; <u>see also</u> <u>Loftis v. United Parcel Service,</u>

<u>Inc.</u>, 342 F.3d 509, 516 (6th Cir. 2003) (failure to comply with the requirements set forth in

<u>Murphy Bros.</u> forecloses the opportunity for removal under Section 1446).

### B.    Stop & Shop Is Entitled To Fees And Costs Incurred In bringing This Motion To Remand.

28 U.S.C. § 1447 states in pertinent part:

> An order remanding the case may require payment of just costs
> and any actual expenses, including attorney fees, incurred as a
> result of the removal.

28 U.S.C. § 1447(c). "Where bad faith, improper motivation or improvidence is demonstrated in

seeking removal, an award of attorney's fees is clearly warranted." <u>Straus</u>, 987 F. Supp. at 55

(citing <u>Gray v. New York Life Ins. Co.</u>, 906 F. Supp. 628, 637 (N.D. Ala. 1995)). Stop & Shop

never served Chase with the Massachusetts Action Complaint (out of respect for Judge

Martinez's orders in federal court in Connecticut), and Chase compounded its misconduct by

making false assertions in its Notice of Removal:

> Chase received a copy of the Complaint and Jury Demand, dated
> October 21, 2004 (the "Compliant") (sic), from Stop & Shop,
> thereby receiving notification of the action.
>
> *    *    *
>
> This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)
> because it has been filed within thirty (30) days of the service or
> receipt by Chase of the Complaint filed by Stop & Shop and within
> one (1) year of the commencement of the action.

<u>See</u> Exh. C at ¶¶ 2, 5.

Chase obviously *obtained* a copy of the state action complaint prior to Stop & Shop serving it because the complaint is attached to Chase's Notice of Removal. However, Stop & Shop did not provide it to them. When asked how they obtained a copy of the complaint, counsel for Chase feigned ignorance, stating that Stop & Shop "must have" sent it to them. See Affidavit of Anthony L. DeProspo, Jr., appended hereto as Exhibit D at ¶ 3. Chase has acted in bad faith and Chase's Notice of Removal is a fraud on this Court. Accordingly, the Court should award Stop & Shop its fees and costs in preparing this motion to remand.

## II.    THE COURT SHOULD DENY CHASE'S MOTION TO DISMISS OR ALTERNATIVELY MOTION TO TRANSFER VENUE

### A.    The Court Has No Jurisdiction To Adjudicate Chase's Motion.

"[T]he point of section 1447(c) is that a federal court does not have the authority to dismiss a claim over which it never had jurisdiction in the first place. ... The merits of the claim are therefore irrelevant to this determination." Smith v. Wis. Dep't of Agric. Trade & Consumer Prot., 23 F.3d 1134, 1139 n.10 (7th Cir. 1994). In disregard of Stop & Shop's pending motion to dismiss the Connecticut Action, Chase filed its own motion to "dismiss" or transfer this case to Connecticut. Such a request should be rejected because this Court does not have jurisdiction over this matter. See Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001) ("When a federal court concludes that it lacks subject matter jurisdiction over a case, it is precluded from rendering any judgments on the merits of the case.").

Since improperly removing the Massachusetts Action, Chase has set in motion a series of litigation tactics to ensure that this case proceeds in Connecticut. For example, on November 30, 2004, Chase moved to consolidate the Connecticut Action (which Stop & Shop has moved to dismiss) with Chase's pending action against Ridgefield. See Motion to Consolidate, appended hereto as Exhibit E. Indeed, it is evident that Chase is manipulating the dockets of two federal

-8-

district courts and hoping that when the dust settles, this case will be joined with the pending action against Ridgefield, a result which the federal district court in Connecticut previously refused to allow. See EMC Corp. v. Roland, 916 F. Supp. 51, 54 (D. Mass. 1996) ("The Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions.") (internal quotation omitted). Because this case was improperly removed, this Court should put an end to Chase's improper litigation tactics and remand the case to Massachusetts state court.

### B.    The Connecticut Action Was An "Anticipatory Filing."

Even if the Court entertains the merits of Chase's Motion, the Court should deny the Motion because the Connecticut Action frustrates the goals of the Declaratory Judgment Act. "Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." Schwartz v. National Van Lines, Inc., 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004). Moreover, "[t]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action." Foster v. Shalala, 926 F. Supp. 850, 859 (N.D. Iowa 1996) (citing Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 16 (1983)). As noted by the Eighth Circuit:

> It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and the time of the suit, **no declaratory judgment should issue**.

BASF Corp. v. Symington, 50 F.3d 555, 558 (8th Cir. 1995) (emphasis added). The Connecticut Action satisfies all the requirements of an improperly brought anticipatory declaratory judgment suit.

Stop & Shop is the "natural plaintiff" in this action.  In examining the propriety of a declaratory judgment action, courts generally "realign the parties to reflect the actual controversy underlying the action."  Symington, 50 F.3d at 557 (citing Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 248 (1952)).  Here, Stop & Shop claims in the Massachusetts Action that it sustained damages as a result of Chase's conduct.  The Connecticut Action essentially sets forth Chase's affirmative defenses to those claims.  Stop & Shop is therefore the "natural plaintiff," and the natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances.  Id. (citing Reid-Walen v. Hansen, 933 F.2d 1390, 1394-95 (8th Cir. 1991)).  No such "exceptional circumstances" exist in a case such as this where an affirmative-defense based declaratory judgment action involves "a threat to an injured party's right to choose its forum."  Id. at 559

In the Massachusetts Action, "the parties will be properly aligned, and far more importantly, the integrity of the Declaratory Judgment Act will be preserved."  State Farm Fire & Cas. Co. v. Taylor, 118 F.R.D. 426, 431 (M.D.N.C. 1988).  Accordingly, the Massachusetts Action, which "reflects the actual controversy" between the parties, should be allowed to proceed.

### C.    Chase Has Improperly Engaged In Forum Shopping.

"The declaratory remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other to the courthouse."  Taylor, 118 F.R.D. at 431 (emphasis in original); see also Schwartz, 317 F. Supp. 2d at 833 ("The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose a forum.").  Rather than be a defendant in Massachusetts, Chase jumped at the opportunity to be a plaintiff in Connecticut.  Chase did so in utter disregard for Judge Martinez's

refusal to terminate the Mediation.  Moreover, Chase's Notice of Removal contains materially

false assertions.  Chase's actions compromise the integrity of the Declaratory Judgment Act and

operate as a strain on judicial resources:

> A contrary view would promote a disorderly race to the
> courthouse.  It would create an environment in which parties to
> disputes would feel the urgency to file a lawsuit lest they lose a
> tactical advantage.  Such an environment would discourage the
> *prelitigation* settlement of disputes and thus *prejudice* judicial
> economy.

Taylor, 118 F.R.D. at 431 (emphasis in original).

At the October 20, 2004 telephonic Mediation conference, Chase requested that the Court

lift the Stay and allow Chase to join Stop & Shop as a party to the pending suit against

Ridgefield.  See Exh. B at 6.  The Court declined – Chase nevertheless immediately filed the

Connecticut Action against Stop & Shop, which was lulled into thinking that Chase was still in

the Mediation process and that Judge Martinez's words at the session were to be respected.

There can be no better example of the misuse of the Declaratory Judgment Act for the purposes

of forum shopping and obtaining first-to-file status.  A declaratory judgment action, "filed in

anticipation of another lawsuit, in order to obtain a more favorable forum or procedural posture"

should be dismissed. First Nationwide Mortgage Corp. v. FISI Madison, LLC, 219 F. Supp. 2d

669, 673 (D. Md. 2002).  Accordingly, Chase's Motion should be denied.

**D.    The "First-To-File" Rule Is Inapplicable To This Case.**

Chase's contention that the "first-to-file" rule serves as a bar to this Court remanding the

Massachusetts Action is unfounded:

> [C]ourts refuse to enforce the first to file rule where forum
> shopping motivated the first-filed action or the first-filed action
> constitutes an 'improper anticipatory filing' made under the threat
> of an imminent suit and asserting a mirror-image of that suit in
> another district.

Schwartz, 317 F. Supp. 2d at 833. Indeed, courts in this district have found that special

circumstances justifying the rejection of the first-to-file rule arise in a case such as this:

> [Where] a plaintiff (1) misleads the defendant into forgoing
> litigation in order to negotiate a settlement and then files suit or
> (2) reacts to a defendant's notice of imminent filing by literally
> sprinting to the courthouse the same day.

Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass.

2000) (internal citation omitted). Here, both circumstances exist. Consequently, "[r]ejection of

the first-filed rule in this case is consistent with the general principles of the Declaratory

Judgment Act." EMC Corp., 916 F. Supp. at 54.

Although Stop & Shop was prepared to file suit against Chase as early as January 2004,

Stop & Shop refrained from doing so to join the Mediation and assist with a tripartite settlement.

Stop & Shop acted in good faith, only to have control over its own claims wrested away through

Chase's devious litigation tactics. Furthermore, the Connecticut Action is clearly an anticipatory

filing. On October 20, 2004, Chase requested that Stop & Shop forbear filing suit against Chase.

See Exh. B at 7. When Stop & Shop advised Chase that Chase's actions prevented counsel from

making any agreements for its client, Chase immediately brought the Connecticut Action. Id.

The Connecticut Action fails to satisfy the requirements of the Declaratory Judgment Act, and

should be dismissed, and the Massachusetts Action should be allowed to proceed.

### E.    Transfer Of The Massachusetts Action Is Not Warranted By The Facts Of This Case.

Chase's request to transfer the Massachusetts Action to Connecticut exposes conclusively

Chase's real intention in bringing this Motion. In its Motion, Chase states:

> [T]he instant action should be transferred and litigated in
> conjunction with the prior pending Connecticut Action
> [against Ridgefield].

See Motion at 13. In essence, Chase is requesting this Court to absolve Chase of its prior disregard for Judge Martinez's order and join Stop & Shop as a party to the pending suit against Ridgefield – a request previously denied. Chase's attempts to avoid the clear directives of Judge Martinez is contemptuous, and should not be countenanced by this Court.

Under the circumstances, any alleged advantages in transferring this action to Connecticut (i.e., convenience of the parties, etc.) must give way to the integrity of the judicial system. "The transfer statutes were not intended to give plaintiffs an end run around the rules of personal jurisdiction and venue ... ." Pedzewick v. Foe, 963 F. Supp. 48, 51 (D. Mass. 1997) (holding that a transfer would result in an abuse of the judicial system). Chase's fraudulent removal of the Massachusetts Action, coupled with its wholly improper request for declaratory relief, outweigh significantly any alleged advantages to litigating this case in Chase's chosen forum. Accordingly, Chase's Motion should be denied, and Massachusetts Action should be remanded to Massachusetts state court.

## Conclusion

For the foregoing reasons, The Stop & Shop Supermarket Company LLC requests this Court to allow its Motion to Remand and deny in its entirety JP Morgan Chase Bank's Motion to Dismiss or Alternatively to Transfer Venue.

December 7, 2004

Respectfully submitted,

THE STOP & SHOP SUPERMARKET
COMPANY LLC,

By its attorneys,

Frank J. Bailey (BBO# 026485)
James W. Matthews (BBO# 560560)
Anthony L. DeProspo, Jr. (BBO# 644668)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

### Certification of Compliance with Local Rule 7.1(A)(2)

I, Frank J. Bailey, counsel for Plaintiff, certify that I attempted to confer with opposing counsel in an effort to narrow or resolve the issue that is the subject of this Motion, and was unable to reach counsel for the Defendant prior to the expiration of the time to file this Motion.

_____                    _____
Frank J. Bailey                                        Date

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party by hand/mail.

Date: December 7, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JPMORGAN CHASE BANK,

        Plaintiff,

V.

STOP & SHOP SUPERMARKET CO.,

        Defendant.

:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.:

OCTOBER 20, 2004

## COMPLAINT

The plaintiff, JPMorgan Chase Bank, by and through its attorneys, allege for its Complaint against the defendant, Stop & Shop Supermarket Co., as follows:

## PARTIES

1.    The plaintiff, JPMorgan Chase Bank, ("Chase"), is a New York banking corporation with its principal place of business in New York, New York. Chase operates a retail bank branch located at Copps Hill Plaza in Ridgefield, Connecticut (the "Ridgefield Branch").

2.    The defendant, Stop & Shop Supermarket Co. ("Stop & Shop"), is a corporation with its principal place of business at 1385 Hancock Street, Quincy, Massachusetts. Stop & Shop operated, and continues to operate, a supermarket at Copps Hill Plaza in Ridgefield, Connecticut.

3.    Ridgefield Properties LLC ("Ridgefield Properties"), owns and operates a shopping plaza commonly known as the Copps Hill Plaza in Ridgefield, Connecticut (the "Plaza").

4.    Upon information and belief, Samuels & Associates Management, LLC ("Samuels") acted as agent for Ridgefield Properties at all times relevant herein.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that diversity of citizenship is present, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

6.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as Chase seeks a declaratory judgment as to the rights and obligations of the parties, and further relief based on that judgment.

7.    This Court has personal jurisdiction over Stop & Shop in that the claims set forth herein arise from Stop & Shop's conducting business in this State.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Stop & Shop is subject to the personal jurisdiction of this Court.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

9.    Chase's claims arise out of Stop & Shop's demand for damages it purports to have incurred as a result of Chase's occupancy of a leased premises located at the Plaza, which occupancy is a direct result of Ridgefield Properties and Samuels' unscrupulous and unethical business practices and their breach of numerous covenants expressed and implied in a lease agreement between Chase and Ridgefield Properties.  Stop & Shop's demand for damages has created an inequitable situation warranting this Court's intervention and the award of equitable and legal remedies.

## The Lease

10.    The legal relationship between Chase and Ridgefield Properties and Samuels' is governed by a lease executed over ten years ago. Chase's predecessor in interest, Chase Manhattan Bank of Connecticut, N.A., and Ridgefield Properties' predecessor in interest, Copps Hill Plaza Shopping Associates, entered into the lease agreement on December 3, 1992 (the "Lease") for the use and occupancy of the demised premises at the Plaza, located at Copps Hill Road and Route 35 in Ridgefield, Connecticut ("Demised Premises"). A copy of the Lease is incorporated herein and is attached as Exhibit A.

11.    Since that time, Chase has used the Demised Premises to operate its Ridgefield Branch. The Ridgefield Branch utilizes a drive-through banking window -- a virtual lifeline to any retail banking establishment.

12.    The Lease authorizes Chase to use and occupy of the Demised Premises until December 31, 2002. The Lease also provides that Chase may hold over and that any such holding over may be treated as a hold-over tenancy or a tenancy at sufferance, the rent for which would be 1.5 times Chase's present Fixed Annual Rent. See Lease at §§ 18.01-.02.

13.    The Lease also contains a Force Majeure clause which provides that "[e]ach party shall be excused for the period of any delay in the performance of any obligation hereunder when prevented from doing so by a cause or causes beyond such party's control. . . ." Lease at Art. 34.

14.    The Lease further provides Chase with the right of Peaceful Possession of the Demised Premises, (see Lease at Art. 38), the implied provisions of a covenant of good faith and fair dealing, and the right to quiet enjoyment of the Demised Premises.

## Negotiations For New Space

15.    On or about December 1999, in anticipation of the expiration of the Lease's term, Chase, Ridgefield Properties, and Samuels commenced discussing Chase's tenancy post December 31, 2002.  Those discussions were commenced by Mr. Joel Sklar of Samuels who informed Chase that the Copps Hill Plaza would be reconfigured.  At that time, Chase informed Ridgefield Properties and Samuels that it would like to remain in the Plaza.  See, e.g., correspondence from Mr. Brendan M. O'Riordan to Mr. Joel Sklarz, dated December 3, 1999, a copy of which is incorporated herein and attached as Exhibit B.

16.    Prior to December of 1999, Chase was unaware that Ridgefield Properties and Samuels planned to reconfigure the Plaza.  Chase similarly was unaware that the reconfiguration included the demolition of strip store retail space located adjacent to the Demised Premises and the subsequent construction in that space of an Eckerd's Drug Store ("Eckerd's").  Chase was unaware that the reconfiguration included the complete demolition of the Demised Premises for additional parking.

17.    Chase was also unaware that the reconfiguration of the Plaza included plans by Stop & Shop to reconstruct the supermarket it operated at the Plaza, including an anticipated expansion of the store from approximately 30,000 square feet to approximately 60,000 square feet.

18.    The new lease discussions continued through the year 2000 and into 2001.  Ridgefield Properties and Samuels continued to lead Chase to believe that space would be available in the Plaza and that its ability to serve its customers would continue unfettered and uninterrupted.  Chase relied on Ridgefield Properties and Samuels' representations in deciding not to pursue opportunities to relocate its Ridgefield Branch elsewhere.

19.    On February 22, 2001, however, Ridgefield Properties and Samuels definitively informed Chase that, if it remained in the Plaza, it would not be allowed to have a drive-through window to service its customers.  Ridgefield Properties and Samuels stated that the Plaza was zoned for only one drive-through and, despite the fact that Chase had operated the one allotted drive-through at the Plaza for over eight years, Eckerd's was to receive the benefit of operating the allotted drive-through going forward.

20.    Having relied to its detriment on Ridgefield Properties and Samuels' representations for over nine months, Chase was left with less than two years to find and fit a suitable alternative location in the small town of Ridgefield.

21.    For approximately one year, Chase explored opportunities to relocate the Ridgefield Branch elsewhere.

22.    In March of 2002, however, Ridgefield Properties and Samuels submitted to Chase a sketch of new building space for Chase's use in the Plaza.  At that time, Ridgefield Properties and Samuels also represented that, if Chase would remain in the Plaza and take the new space, they would apply to the Ridgefield Zoning Board for the approval of an additional drive-through window for Chase.

23.    Based on these representations by Ridgefield Properties and Samuels, Chase ceased pursing locations elsewhere and entered into negotiations exclusively with Ridgefield Properties and Samuels.  Those negotiations ultimately culminated in Chase's signing of a Letter of Intent in June 2002, and the subsequent creation of draft leases.  A copy of a draft lease is incorporated herein and attached as Exhibit C.

24.    In September of 2002, with just four months remaining on the term of the Lease, Ridgefield Properties and Samuels once again reversed their position with regard to the drive-

through for the proposed space for Chase. Ridgefield Properties and Samuels stated that they would no longer provide good faith efforts to obtain zoning approval (including any necessary appeals) for the requisite drive-through window.

25.    As Ridgefield Properties and Samuels were aware, a drive-through window was and is vital to the success of the Ridgefield Branch. Chase had consistently made it known to Ridgefield Properties and Samuels that a drive-through window was a prerequisite to its continued tenancy at the Plaza. See, e.g., correspondence from Mr. O'Riordan to Mr. Sklar, dated February 3, 2000; Correspondence from Mr. O'Riordan to Mr. Sklar, dated March 22, 2000; Facsimile from Mr. O'Riordan to Mr. Sklar, dated January 31, 2001. Copies of these correspondence are incorporated herein and attached as Exhibits D, E, and F, respectively.

26.    Ridgefield Properties and Samuels knew that Chase needed a drive-through for its location, used that fact to induce Chase to enter into an agreement, and reversed their position with respect to the drive-through once Ridgefield Properties and Samuels perceived that it would be too late for Chase to secure an alternative location.

27.    Upon securing a new location for its retail banking branch, Chase worked expeditiously to fit that location, which included necessary environmental remediation. Although the new location was not expected to be ready for operation until July 1, 2003, through Chase's diligent efforts, it vacated the Demised Premises earlier than anticipated on May 26, 2003.

## Reconfiguration of the Plaza

28.    Beginning in November 2001, Ridgefield Properties and Samuels began their reconfiguration of the Plaza. This reconfiguration included the demolition of existing structures and site work that resulted in the excavation of the area surrounding the Demised Premises.

29.   As a direct result of the demolition and construction work, Chase experienced a substantial disruption in its use of the Demised Premises, including, but not limited to:

    a.   loss of water for periods exceeding one week;

    b.   intermittent loss of use of plumbing and other utilities; and

    c.   intermittent loss of use of the drive-through.

30.   Furthermore, the area surrounding the Demised Premises was so destructed that customers thought the bank was closed.  As a result, the Ridgefield Branch's comparable sales, which had been trending up, fell dramatically through the first half of 2002.  Chase was ultimately forced to post large "OPEN FOR BUSINESS" signs to alert even its existing customers that the Ridgefield Branch was neither closed nor closing.

## Government Intervention

31.   Chase, a victim of Ridgefield Properties and Samuels' unscrupulous tactics, was prohibited from performing its obligation to surrender the Demised Premises at the expiration of the Lease.

32.   The alternative site ultimately proposed by Ridgefield Properties and Samuels at the Plaza could not have a drive-through due to the zoning regulations of the Town of Ridgefield.

33.   Chase's new location could not be ready for Chase until after the expiration of the Lease as a result of environmental regulations and requisite remediation.

34.   These governmental regulations and controls necessarily prevented Chase from performing its obligation to surrender the Demised Premises as of December 31, 2002.

35.   An actual controversy existed as to Chase's rights and duties under the Lease and its equitable right to remain at the Demised Premises until its new premises were completed. Accordingly, on December 20, 2002, Chase filed a declaratory judgment action against

Ridgefield Properties and Samuels entitled, <u>JPMorgan Chase Bank v. Ridgefield Properties LLC,</u> <u>et al</u>, Civil Action No.: 3:02 CV 2266 (AWT), pending before the United States District Court for the District of Connecticut (the "Action"). The Action was commenced for purposes of establishing the rights of the parties, including, more specifically, the resulting economic damage that Chase would have incurred and the damage to Chase's customers and relationships with those customers, were Chase forced to surrender the Demised Premises prior to the expiration of the Lease.

### Demands by Stop & Shop

36.    After the commencement of the Action, Chase received a "demand for damages" from Stop & Shop on January 22, 2004. <u>See</u> Correspondence from Frank J. Bailey, Esq. to the plaintiff, JPMorgan Chase Bank, dated January 22, 2004, a copy of which is incorporated herein and attached as Exhibit G.

37.    Stop & Shop claims to have been injured as a result of Chase's hold-over occupancy of the Demised Premises, alleging that said hold-over purportedly delayed the renovation and expansion of its supermarket located at the Plaza. More recently, Stop & Shop further alleged that Chase intentionally interfered with its business expectancies.

38.    Any delay experienced by Stop & Shop in connection with its renovation and expansion project did not result from Chase's hold-over at the Demised Premises. Stop & Shop did not obtain the requisite approvals and permits in order to commence construction until well after Chase vacated the Demised Premises on May 23, 2003.

39.    On or about October 29, 2003, Stop & Shop submitted a development application to the Town of Ridgefield for purposes of obtaining the permit required for the planned renovation, five (5) months after Chase vacated the Demised Premises. <u>See</u> Development Application, dated

October 29, 2003 ("Development Application"), a copy of which is incorporated herein and attached as Exhibit H.

40.    On or about January 15, 2004, Stop & Shop applied for the requisite demolition permit in order to commence the demolition that was needed in connection with the renovation project. See Application for Demolition Permit, dated January 15, 2004 ("Demolition Permit"), a copy of which is incorporated herein and attached as Exhibit I.

41.    Stop & Shop claims to have incurred in excess of $1 million in damages as a result of a purported delay in construction caused by Chase's occupancy of the Demised Premises. Stop & Shop's allegations and demands have frustrated the possibility of otherwise reaching a resolution of the Action as complete relief cannot be afforded because of Stop & Shop's claims.

42.    The allegations asserted by Stop & Shop and related demands for payment of damages have created a reasonable apprehension on the part of Chase that it will be sued in connection with these allegations.  As a result, an actual controversy exists between Chase and Stop & Shop regarding their respective rights and Chase's right to remain at the Demised Premises until its new location was completed.


## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment - Force Majeure)

43.    Chase incorporates Paragraphs 1 through 42 of this Second Amended Complaint as if fully set forth herein.

44.    Chase seeks a declaratory judgment against Stop & Shop, pursuant to 28 U.S.C. § 2201, as to Chase's rights and duties and that its obligation to surrender the Demised Premises was excused pursuant to force majeure, as contemplated by Article 34 of the Lease.

45.    Chase was delayed in performing its obligation to surrender because of Ridgefield Properties and Samuels' conduct, government zoning and environmental regulations and controls, and other factor's beyond Chase's control.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment - Equitable Estoppel)

46.    Chase incorporates Paragraphs 1 through 45 of this Second Amended Complaint as if fully set forth herein.

47.    Chase seeks a declaratory judgment against Stop & Shop, pursuant to 28 U.S.C. § 2201, that Ridgefield Properties was equitably estopped from evicting Chase from the Demised Premises prior to Chase's relocation of the Ridgefield Branch.

48.    Ridgefield Properties and Samuels represented to Chase that it would have a drive-through at its new location in the Plaza. That representation was calculated and intended to induce Chase to cease negotiations with other parties and execute a Letter of Intent to lease space in the Plaza.

49.    Chase relied to its detriment on Ridgefield Properties and Samuels' representations.

50.    Should Chase have been forced to surrender the Demised Premises prior to relocation, it would have incurred substantial harm, including, but not limited to, the loss of its customer base and the cost to re-enter the market as a new market participant.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment - Equitable Entitlement)

51.    Chase incorporates Paragraphs 1 through 50 of this Second Amended Complaint as if fully set forth herein.

52.    Chase seeks a declaratory judgment against Stop & Shop, pursuant to 28 U.S.C. § 2201, that Chase was equitably entitled to remain in the Demised Premises until it could relocate the Ridgefield Branch.

53.    If Chase had been forced to surrender the Demised Premises at the expiration of the term of the Lease, it would have inevitably lost numerous accounts. Chase would have been forced to enter the market as a new market participant at great additional cost when relocated the Ridgefield Branch.

54.    By contrast, as a result of Chase's continued occupancy of the Demised Premises, Ridgefield Properties and Samuels only temporarily lost a small number of parking spaces, as it was their intent to demolish the Demised Premises for that purpose.

55.    Chase' continued occupancy of the Demised Premises did not delay or otherwise impact Stop & Shop's renovation and expansion of its supermarket because Stop & Shop did not begin to apply for the appropriate approvals and permits required in connection with the renovation until five (5) months after Chase vacated the Demised Premises.

56.    The potential harm to Chase far exceeded any potential harm to Stop & Shop.


**TRIAL BY JURY**

The plaintiff, JPMorgan Chase Bank, demands trial by jury on all issues that are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, JPMorgan Chase Bank, requests relief as follows:

1. Declaratory judgment that Chase's obligation to surrender the Demise Premises is excused pursuant to force majeure was contemplated by Article 34 of the Lease;

2. Declaratory judgment that Chase was entitled to remain at the Demised Premises until such time as it could relocate its Ridgefield Branch;

3. Declaratory judgment that Chase's conduct in remaining at the Demised Premises did not cause any delay in the construction and renovation of Stop & Shop's supermarket located in the Plaza;

4. Costs of this action; and

5. Such additional and further relief as the Court deems just and proper.


Dated: October 20, 2004
      Hartford, Connecticut

THE PLAINTIFF,
JPMORGAN CHASE BANK,


By: _____
Timothy S. Fisher (CT 05370)
Jason C. Welch (CT 23418)
McCARTER & ENGLISH LLP
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Tel: 860.275.6700
Fax: 860.724.3397


HARTFORD: 625302.01

12

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JP MORGAN CHASE BANK,<br><br>     Plaintiff,<br><br>v.<br><br>STOP & SHOP SUPERMARKET CO. (sic),<br><br>     Defendant. | Civil Action No. 04-CV-1763 (AWT) |

## THE STOP & SHOP SUPERMARKET COMPANY LLC'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

The Stop & Shop Supermarket Company LLC ("Stop & Shop") currently has an action for damages pending against JP Morgan Chase Bank ("Chase") in the Commonwealth of Massachusetts (the "Massachusetts Action"). Chase's Complaint for declaratory judgment (the "Connecticut Action" or the "Complaint"), filed in this Court one day before the Massachusetts Action, is founded exclusively on affirmative defenses to the Massachusetts Action. Moreover, Chase filed the Connecticut Action in disregard of a stay imposed by this Court.

Stop & Shop is the "natural plaintiff" in this case, and the Connecticut Action is nothing more than a preemptive strike to deprive Stop & Shop of its right to litigate its claims in a forum of its own choosing. Chase's improper litigation tactics and race to the courthouse should not be countenanced by this Court. Consequently, the Court should grant Stop & Shop's motion to dismiss the Connecticut Action and allow the Massachusetts Action to proceed accordingly.

### Preliminary Statement

Stop & Shop incurred damages as a result of Chase's intentional and willful failure to vacate retail space located at Copps Hill Plaza, Ridgefield, Connecticut (the "Premises"). Stop & Shop is a

major tenant at the Premises. Chase has no defense to its failure to vacate timely, except to make the absurd argument that its failure to quit was the result of "force majure." Chase's failure to vacate the Premises interfered with Stop & Shop's planned expansion project, and caused Stop & Shop to incur thousands of dollars in damages in extra construction costs and lost profits.

Since commencing litigation, Chase's misconduct has continued. Chase originally brought suit against its landlord, Ridgefield Properties LLC ("Ridgefield"), and the parties agreed to mediate the case before Judge Magistrate Donna F. Martinez. As part of the mediation, the Court directed a stay of all further litigation, allowing Judge Martinez a chance to get the case settled. Once Stop & Shop asserted its claims, Stop & Shop agreed to participate in the mediation in an effort to achieve a tripartite global settlement. The stay remained in effect. Stop & Shop participated in several mediation sessions and negotiated in good faith.

In an apparent unilateral attempt to abandon the mediation, Chase requested that the stay be lifted in order to join Stop & Shop as a party to the pending suit. Judge Martinez specifically declined Chase's request. Within a few hours of the Court's decision, however, Chase initiated a separate lawsuit against Stop & Shop (the "Connecticut Action," as defined above). Stop & Shop, having been apprised that Chase planned to commence an action in violation of the stay (albeit after Chase had already filed the Action), brought suit against Chase in Massachusetts state court but did not serve the complaint. Stop & Shop elected to proceed cautiously in light of the Court's clear statement that the stay remained in effect.

Chase deliberately misled Stop & Shop when it advised Stop & Shop that it was "going to file" an action against Stop & Shop. As the Connecticut Action's time-stamp indicates, the Action had already been filed at the time those statements were made. Indeed, in a feeble attempt to

camouflage its misconduct, Chase now claims that this Court's custom and practice is to time-stamp documents one hour *behind* the actual time of filing.

Chase should not be allowed to benefit from such sharp and disrespectful tactics. Stop & Shop's claims are properly pending in Massachusetts. Chase has conceded that it is subject to personal jurisdiction in Massachusetts. The Connecticut Action is procedurally and substantively defective, and Chase is not entitled to the declaratory relief requested. Accordingly, the Court should allow Stop & Shop's motion to dismiss.

## **Factual Background**

### Chase's Tenancy at the Premises

On or about December 3, 1992, the predecessors-in-interest to Chase and Ridgefield entered into a lease (the "Chase Lease") for retail space at the Premises. See Complaint at ¶ 10. Chase operated a branch bank location. Id. at ¶ 11. The Chase Lease expired on December 31, 2002, and did not provide any option for renewal by Chase. Id. at ¶ 12.

### Stop & Shop's Tenancy at the Premises

In 1970, Stop & Shop's predecessor-in-interest commenced retail operations at the Premises. See Complaint and Jury Demand (the "Massachusetts Action," as defined above), appended hereto as Exhibit A at ¶ 6. Stop & Shop operated and continues to operate a supermarket on approximately 30,080 square feet of retail space. Id. On or about October 26, 2001, Stop & Shop, as tenant, and Ridgefield, as landlord, entered into an Amended and Restatement of Lease regarding Stop & Shop's leasehold at the Premises (the "Stop & Shop Lease"). Id. at ¶ 7.

At the time the parties entered into the Stop & Shop Lease, a Genovese Drugstore ("Genovese") operated in retail space located directly adjacent to Stop & Shop ("Building A"). See Exh. A at ¶ 8. Several other retail businesses also operated at the Premises in a separate structure

-3-

located in front of and to the left of Stop & Shop ("Building B"). Id. Chase operated its banking

branch in another separate structure located in front of Building B ("Building C"). Id.

Expansion Project and Chase's Failure to Vacate the Premises

The Stop & Shop Lease contemplated an expansion of Stop & Shop's retail space to 65,125

square feet and a reconfiguration of the Premises (the "Expansion Project"). See Exh. A at ¶ 9. Stop

& Shop agreed to reimburse Ridgefield for a portion of the construction costs and to pay Ridgefield

an increased rent (based upon Stop & Shop's increased store size) upon completion of the Expansion

Project. Id.

Pursuant to the terms of the Stop & Shop Lease, the Lease term would not begin until

Ridgefield could deliver to Stop & Shop occupancy of the former Genovese space in Building A.

See Exh. A at ¶ 11. Genovese would not agree to surrender its Building A space until it could take

occupancy of its new space in the former Building C location. Id. The new Genovese location could

not be completed until Chase vacated Building C. Id. Although the Chase Lease expired on

December 31, 2002, Chase did not vacate Building C until May 2003. See Complaint at ¶¶ 34, 38.

Stop & Shop therefore incurred an approximate five month delay in commencing the Expansion

Project. See Exh. A at ¶¶ 30-35.

Chase's Suit Against Ridgefield

On December 20, 2002, Chase brought a declaratory judgment action against Ridgefield in

the United States District Court for the District of Connecticut styled as JP Morgan Chase Bank v.

Ridgefield Properties LLC, et al., Civil Action No. 3:02-CV-2266 (the "First Chase Action"). See

Complaint at ¶ 35. A copy of the First Chase Action, as subsequently amended on January 8, 2003,

is appended hereto as Exhibit B. In the First Chase Action, Chase claimed that the Expansion Project

interfered with Chase's customer relations and caused Chase to incur damages. Id. On or about

-4-

August 11, 2003, Ridgefield asserted counterclaims against Chase for tortious interference and unfair trade practices. Ridgefield's Answer to the First Chase Action is appended hereto as <u>Exhibit C</u>.

By stipulation dated December 19, 2003, Chase and Ridgefield agreed to mediate the First Chase Action (the "Mediation"). <u>See</u> Stipulation for Reference to ADR, appended hereto as <u>Exhibit D</u>. As part of the agreed Mediation, the Court stayed all litigation (the "Stay"). <u>See</u> Exh. D at ¶ II.

Stop &amp; Shop's Participation in the Mediation

On January 22, 2004, Stop &amp; Shop, through counsel, advised Chase that Chase's failure to vacate the Premises by December 31, 2002 delayed commencement of the Expansion Project and caused Stop &amp; Shop to incur damages including extra construction costs and lost profits. <u>See</u> Complaint at ¶ 36. In an effort to facilitate a speedy resolution of Stop &amp; Shop's claims, and to assist Chase in negotiating a global settlement with Ridgefield, Stop &amp; Shop refrained from filing suit against Chase and agreed to join the Mediation. <u>See</u> Affidavit of Frank Bailey ("Bailey Aff."), appended hereto as <u>Exhibit E</u> at ¶ 3. The Stay remained in effect. <u>See</u> Notice to Parties, appended hereto as <u>Exhibit F</u>.

On July 22, 2004, counsel for Chase, Ridgefield and Stop &amp; Shop participated in Mediation before Judge Martinez. <u>See</u> ADR Status Report and Request to Continue Stay, appended hereto as <u>Exhibit G</u>. No settlement was reached. <u>See</u> Bailey Aff. at ¶ 4. On October 1, 2004, the parties participated in a telephonic status conference with Judge Martinez. <u>Id.</u> at ¶ 5. The Stay remained in effect. <u>See</u> Exh. F.

The Court had previously scheduled an additional in-person Mediation session for October 20, 2004. <u>See</u> Bailey Aff. at ¶ 6. Approximately one week before the October 20, 2004 Mediation, counsel for Chase informed counsel for the other parties that, because of a client merger, he could not have a decision-maker available on October 20, 2004 and asked that the session be continued. <u>Id.</u>

Counsel agreed, but the parties agreed to confer by telephone on October 20, 2004 with Judge

Martinez to select a new date. Id. Notably, counsel for Chase did not inform counsel for the other

participants that Chase had decided to abandon the Mediation. Id.

### Chase's Suit Against Stop & Shop

On October 20, 2004, counsel for the parties participated in the telephonic conference with

Judge Martinez. See Bailey Aff. at ¶ 7. At that conference, counsel for Chase announced for the first

time that Chase no longer desired to mediate the case and requested that Judge Martinez lift the Stay

to add Stop & Shop as a party to the First Chase Action. Id. Judge Martinez declined to do so. Id.

Counsel for Chase also requested that Stop & Shop agree not to initiate suit against Chase. Id. at ¶ 8.

Counsel for Stop & Shop explained that Chase's failure to inform counsel of his true purpose prior to

the Mediation session left counsel with no ability to discuss this intent with Stop & Shop. Id. The

conference concluded with no settlement being reached. Id. At approximately 4:00 PM that day,

after the Mediation session and after Judge Martinez declined to lift the stay, counsel for Chase left

the following voicemail message for Stop & Shop's counsel:

> Hi Frank, it's Tim Fisher, it's about 4:00 p.m. on Wednesday [October
> 20th]. I wanted to follow up with you on the issue that I raised towards
> the end of our conference call today about whether you would agree to
> forebear on filing suit and I understand you're out for the rest of the
> afternoon and James Matthews is apparently unavailable so I want to
> leave word with you. Since you aren't able to make a commitment on
> anything and I couldn't file a motion to add a party in the current action
> given the stay, I'm going to file a separate declaratory judgment action
> against Stop & Shop in federal court here in Hartford, identify the
> related case that we have already pending and so I wanted to give you a
> heads up about that. Give me a call if you want to talk about it and I
> can get you a quick copy of you'd like 860-275-6775.

Id. at ¶ 9.

Stop & Shop believed that Chase's threat to bring an action against Stop & Shop in the

Connecticut District Court violated the spirit, if not the precise terms of the Stay. See Bailey Aff. at

¶ 10. On October 21, 2004, Stop & Shop, in order to protect its rights, filed the Massachusetts Action against Chase in Massachusetts Superior Court styled as The Stop & Shop Supermarket Company LLC v. JP Morgan Chase Bank, Norfolk County Civil Action No. 04-01745-B. See Exh. A.[1]  In respect of the Stay, and Judge Martinez's directives, Stop & Shop did not serve Chase with the Massachusetts Action Complaint. See Bailey Aff. at ¶ 10.[2]

On November 8, 2004, however, Chase served Stop & Shop with the Connecticut Action. See Bailey Aff. at ¶ 11. The Connecticut Action's Complaint is time-stamped as received by the Court at 3:47 PM on October 20, 2004, shortly after Judge Martinez denied Chase's request to lift the Stay and approximately 15 minutes before counsel for Chase (by voicemail) advised Stop & Shop that he was "going to file" a separate action against Stop & Shop. See Complaint at 1; see also Bailey Aff. at ¶ 11. On November 23, 2004, counsel for Stop & Shop confronted Chase's counsel with this irregularity. See Bailey Aff. at ¶ 12. Chase's counsel responded that it was customary for the clerk at the Connecticut District Court to time-stamp documents one hour behind the actual time of filing. Id. Stop & Shop has confirmed with a clerk of this Court that Chase's contention, absurd on its face, is without merit. Id.

---

[1]    Stop & Shop previously had prepared a complaint against Chase which it had submitted to Judge Martinez in connection with the Mediation. Stop & Shop could not, however, commence a new action in Massachusetts Superior Court after 4:00 PM on Monday, October 20, 2004. Stop & Shop instead commenced the Massachusetts Action at the first available opportunity, i.e., the morning of the next business day.

[2]    Incredibly, although Stop & Shop has never served Chase with the complaint in the Massachusetts Action (nor even provided Chase's counsel with a courtesy copy), Chase removed the Massachusetts Action to the U.S. District Court for the District of Massachusetts on November 17, 2004. This is wholly improper. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999). Chase's removal will the subject of a forthcoming motion to remand.

Furthermore, on November 24, 2004, Chase compounded its already improper conduct by serving Stop & Shop with a Motion to Dismiss or Alternatively to Transfer Venue, filed in the Massachusetts District Court. See Motion to Dismiss or Alternatively to Transfer Venue, appended hereto as Exhibit H. Stop & Shop will vigorously oppose Chase's efforts to further manipulate the Court's jurisdiction over this suit.

## **ARGUMENT**

### **The Court Should Dismiss**
### **Chase's Declaratory Judgment Action**

District courts have wide discretion in deciding whether to entertain declaratory judgment

actions. Nucor Corp. v. Aceros Y Maquilas De Occidente, S.A. DE C.V., 28 F.3d 572, 577 (7th Cir.

1994). "[D]eclaratory judgment actions founded exclusively on a defense to a state law claim should

be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to

choose the forum and time of suit." BASF Corp. v. Symington, 50 F.3d 555, 558 (8th Cir. 1995).

Indeed, "[t]he federal courts have long resisted such declaratory judgment actions as a perversion of

the Declaratory Judgment Act." Morrison v. Parker, 90 F. Supp. 2d 876, 880 (W.D. Mich. 2000); see

also Int'l Ass'n of Entrepreneurs of America v. Angoff, 58 F.3d 1266, 1270 (8th Cir. 1995) ("The

Declaratory Judgment Act is not to be used either for tactical advantage by litigants or to open a new

portal of entry to federal courts for suits that are essentially defensive or reactive to state actions.").

Thus, although the order of filing is generally a relevant factor, "a suit of declaratory judgment aimed

solely at wresting the choice of forum from the 'natural plaintiff' will normally be dismissed and the

case allowed to proceed in the usual way." Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d

425, 431 (7th Cir. 1993). "This is consistent with the principle that 'the federal declaratory judgment

is not a prize to the winner of a race to the courthouses.'" Pro-Fac Coop., Inc. v. Alpha Nursery, Inc.,

205 F. Supp. 2d 90, 104 (W.D.N.Y. 2002) (quoting Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215,

219 (2d Cir. 1978)).

A.     **The Connecticut Action Improperly Seeks To Litigate In**
       **This Purported Declaratory Judgment Action Chase's**
       **Affirmative Defenses To The Massachusetts Action**

"Declaratory judgment actions brought in the face of clear threats of suit and seeking

determinations that no liability exists will be closely scrutinized as potentially improper anticipatory

-8-

filings if the other party proceeds to file." Schwartz v. National Van Lines, Inc., 317 F. Supp. 2d 829,

833 (N.D. Ill. 2004); see also Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y.

2000) ("An improper anticipatory filing is one made under the apparent threat of a presumed

adversary filing the mirror image of that suit in another court."). A declaratory judgment action,

"filed in anticipation of another lawsuit, in order to obtain a more favorable forum or procedural

posture" should be dismissed. First Nationwide Mortgage Corp. v. FISI Madison, LLC, 219 F. Supp.

2d 669, 673 (D. Md. 2002); see also Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d

1002, 1007 (8th Cir. 1993) (noting that the declaratory judgment plaintiff should not be motivated by

forum-shopping concerns). Moreover, "[t]he Declaratory Judgment Act is not to be used to bring to

the federal courts an affirmative defense which can be asserted in a pending state action." Foster v.

Shalala, 926 F. Supp. 850, 859 (N.D. Iowa 1996) (citing Franchise Tax Bd. of California v. Constr.

Laborers Vacation Trust for S. California, 463 U.S. 1, 16 (1983)); see also Hanes Corp. v. Millard,

531 F.2d 585, 592-93 (D.C. Cir. 1976) ("The anticipation of defenses is not ordinarily a proper use of

the declaratory judgment procedure."). As noted by the Eighth Circuit:

> It is our view that where a declaratory plaintiff raises chiefly an
> affirmative defense, and it appears that granting relief could effectively
> deny an allegedly injured party its otherwise legitimate choice of the
> forum and the time of the suit, **no declaratory judgment should issue**.

Symington, 50 F.3d at 558 (emphasis added). The Connecticut Action satisfies all the requirements

of an improperly brought anticipatory declaratory judgment suit. As such, the Connecticut Action

should be dismissed.

Stop & Shop is the "natural plaintiff" in this action. In examining the propriety of a

declaratory judgment action, courts generally "realign the parties to reflect the actual controversy

underlying the action." Symington, 50 F.3d at 557 (citing Public Service Comm. of Utah v. Wycoff

Co., 344 U.S. 237, 248 (1952)). Here, Stop & Shop claims in the Massachusetts Action that it

sustained damages as a result of Chase's conduct. The Connecticut Action essentially sets forth

Chase's affirmative defenses to those claims. Stop & Shop is therefore the natural plaintiff in this

case. Id. The natural plaintiff's choice of forum and law will be disturbed only in exceptional

circumstances. Id. (citing Reid-Walen v. Hansen, 933 F.2d 1390, 1394-95 (8th Cir. 1991)). No such

"exceptional circumstances" exist in a case such as this where an affirmative-defense based

declaratory judgment action involves "a threat to an injured party's right to choose its forum." Id. at

559. Accordingly, the Massachusetts Action, which "reflects the actual controversy" between the

parties, should be allowed to proceed.

Furthermore, "[t]he declaratory remedy is *not a tactical device* whereby a party who would be

a defendant in a coercive action may choose to be a plaintiff if he can beat the other to the

courthouse." State Farm Fire & Cas. Co. v. Taylor, 118 F.R.D. 426, 431 (M.D.N.C. 1988) (emphasis

in original). Rather than be a defendant in Massachusetts, Chase jumped at the opportunity to be a

plaintiff in Connecticut. Chase's actions violated the terms, or at least the spirit, of the Mediation,

compromises the integrity of the Declaratory Judgment Act and operates as a strain on judicial

resources:

> A contrary view would promote a disorderly race to the courthouse. It
> would create an environment in which parties to disputes would feel the
> urgency to file a lawsuit lest they lose a tactical advantage. Such an
> environment would discourage the *prelitigation* settlement of disputes
> and thus *prejudice* judicial economy.

Taylor, 118 F.R.D. at 431 (emphasis in original). At the October 20, 2004 telephonic Mediation

conference, Chase requested that the Court lift the Stay and allow Chase to join Stop & Shop as a

party to the First Chase Action. See Bailey Aff. at ¶ 7. The Court declined – Chase nevertheless

immediately filed the Connecticut Action against Stop & Shop, which was lulled into thinking that

Chase was still in the mediation process and that Judge Martinez's words at the session were to be

respected. There can be no better example of the misuse of the declaratory judgment action for the purposes of forum shopping and obtaining first-to-file status. In contrast, in the Massachusetts Action, "the parties will be properly aligned, and far more importantly, the integrity of the Declaratory Judgment Act will be preserved." Taylor, 118 F.R.D. at 431.

In this case, the declaratory judgment plaintiff Chase is seeking preemptively to avoid a lawsuit commenced by Stop & Shop, the injured party and "natural plaintiff." The Connecticut Action is founded entirely on Chase's affirmative defenses to Stop & Shop's damages claims asserted in the Massachusetts Action. The Court should resist Chase's attempts to engage in forum shopping; indeed, Chase brought the Connecticut Action for the sole purpose of denying Stop & Shop its legitimate choice of forum. See Schwartz, 317 F. Supp. 2d at 833 ("The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose a forum."). Chase has no right to the declaratory relief requested and Stop & Shop is entitled to litigate its claims in Massachusetts, the proper forum for this suit. Accordingly, the Court should dismiss the Connecticut Action.

**B.    The Connecticut Action Frustrates The Goals Of The Declaratory Judgment Act**

"[I]n determining whether to entertain a declaratory judgment action, a court should consider whether a useful tactical purpose will be served thereby; in other words, does the declaratory plaintiff need the remedy." Taylor, 118 F.R.D. at 429; see also Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (observing that courts will entertain declaratory judgment action only when judgment will serve a useful purpose in clarifying and settling legal relations at issue, or when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.). "A useful purpose may be served if the party entitled to bring a coercive action *fails* or *delays* in bringing it. A declaration of rights and obligations is useful if it prevents the accrual of damages. Additionally, a declaration may be useful if it relieves a party from acting at his peril

-11-

while uncertain of his legal rights because another party is yet to bring a coercive action." <u>Taylor</u>, 118 F.R.D. at 429 (emphasis in original).

In this case, none of the factors weigh in favor of Chase's necessity for a remedy.  For instance, Stop & Shop did not "fail" or "delay" bringing a coercive action.  By the time Stop & Shop learned that Chase was "going to file" a declaratory judgment action, Chase had already done so; thus, Stop & Shop "had no opportunity to bring a coercive action." <u>Taylor</u>, 118 F.R.D. at 429.  In addition, Chase has failed to allege (nor can it allege) that declaratory relief is necessary to intervene in the accrual of damages, or that Chase is refraining from acting due to some uncertainty of its legal rights.  Rather, *Chase has already acted* and the damages incurred by Stop & Shop have already accrued.  Chase has relocated its bank branch to an alternate location and has completely severed its ties to the Premises.  See <u>Basic v. Fitzroy Eng'g, Ltd.</u>, 949 F. Supp. 1333, 1338 (N.D. Ill. 1996) ("the purpose of declaratory relief is to allow a party to avoid damage <u>prior</u> to an impending injury causing event").  Chase's immediate rights are simply not at issue.  The Connecticut Action is solely responsive to the Massachusetts Action and is not ripe for declaratory judgment.  See <u>Psarianos v. Standard Marine, Ltd., Inc.</u>, 12 F.3d 461, 463 (5th Cir. 1994) (noting that a district court may refuse declaratory relief where "the matter may be before a state court capable of resolving all the issues between the parties").  Because Chase's declaratory judgment action would serve no purpose under the Declaratory Judgment Act, the Connecticut Action should be dismissed.

**C.    The "First-To-File" Rule Is Irrelevant Because Chase Brought The Connecticut Action To Gain An Improper Tactical Advantage**

Stop & Shop expects that Chase will rely on the so-called "first-to-file" rule in opposition to this Motion.  However, any contention that the "first-to-file" rule serves as a bar to Stop & Shop's request for dismissal is unfounded:

> [C]ourts refuse to enforce the first to file rule where forum shopping
> motivated the first-filed action or the first-filed action constitutes an
> 'improper anticipatory filing' made under the threat of an imminent suit
> and asserting a mirror-image of that suit in another district.

Schwartz, 317 F. Supp. 2d at 833; see also Pro-Fac Coop., 205 F. Supp. 2d at 104 ("[D]istrict courts

have typically found an exception to the first-filed rule where declaratory actions are filed in response

to demand letters that give specific warnings as to ... subsequent legal action.") (internal citation

omitted). Indeed, "most of the cases in [the Second] Circuit have disregarded the first filed rule

where the competing suits were filed only days apart." Citibank, N.A. v. Affinity Processing Corp.,

248 F. Supp. 172, 175 (E.D.N.Y. 2003). Here, the Connecticut Action is clearly an anticipatory

filing. On October 20, 2004, Chase requested that Stop & Shop forbear filing suit against Chase. See

Bailey Aff. at ¶ 8. When Stop & Shop advised stated that Chase's actions prevented counsel from

making any agreements for its client, Chase immediately brought the Connecticut Action. Id. at ¶¶ 8,

11. In addition, the two Actions were filed within one day of each other. The first-to-file rule is

therefore inapplicable to this case.

Moreover, "the application of the first-filed rule should not penalize parties for their efforts to

settle matters out of court." Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees

Retirement Sys., 915 F. Supp. 131, 144 (W.D. Mo. 1996). Although Stop & Shop was prepared to

file suit against Chase as early as January 2004, Stop & Shop refrained from doing so to join the

Mediation and assist with a tripartite settlement. Stop & Shop acted in good faith, only to have

control over its own claims wrested away through Chase's devious litigation tactics. Chase has

conceded that it is subject to personal jurisdiction in Massachusetts. See Exh. H at 11. The

Connecticut Action fails to satisfy the requirements of the Declaratory Judgment Act, and should be

dismissed.

## Conclusion

For the foregoing reasons, The Stop & Shop Supermarket Company LLC requests this Court to allow its Motion to Dismiss.

November 29, 2004

Respectfully submitted,

THE STOP & SHOP SUPERMARKET COMPANY LLC,

By its Attorney,

_____

Lewis K. Wise
Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
CityPlace I, 22nd Floor
185 Asylum Street
Hartford, CT 06103-3460
(860) 278-7480

*Of counsel:*
Frank J. Bailey
James W. Matthews
Anthony L. DeProspo, Jr.
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

AO 458 (Rev. 10/95)   Appearance

# UNITED STATES DISTRICT COURT

DISTRICT OF     <u>**MASSACHUSETTS, EASTERN DIVISION**</u>

## APPEARANCE

Case Number: _____

To the Clerk of this court and all parties of record:

      Enter my appearance as counsel in this case for

        **JPMORGAN CHASE BANK, n/k/a JPMORGAN CHASE BANK, N.A.**

      I certify that I am admitted to practice in this court.

| | |
|---|---|
| **November 17, 2004** | *Signature* |
| Date | |
| | **Thomas J. Finn**     **# 561346** |
| | Print Name        Bar Number |
| | **McCarter & English LLP** |
| | Address |
| | **CityPlace I, 185 Asylum Street** |
| | City     State     Zip Code |
| | **Hartford, CT 06103** |
| | Phone Number     Fax Number |
| | **860-275-6700**     **860-724-3397** |

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

THE STOP & SHOP SUPERMARKET CO. LLC

**DEFENDANTS**

JPMORGAN CHASE BANK

(b) County of Residence of First Listed Plaintiff **Norfolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **New York**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Frank J. Bailey, Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, Ma 02110  (617) 646-2000

Attorneys (If Known)
Thomas J. Finn
McCarter & English LLP
CityPlace I, 185 Asylum Street
Hartford, CT  (860) 275-6700

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | ☐ 863 DIW C/DIW W (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus: | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

Under LABOR: ☐ 730 Labor/Mgmt.Reporting & Disclosure Act; ☐ 740 Railway Labor Act; ☐ 790 Other Labor Litigation; ☐ 791 Empl. Ret. Inc. Security Act

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Sections 1441 and 1446 – Removal; 28 U.S.C. Section 1332 – Diversity Jurisdiction

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ **over $75,000**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
**November 17, 2004**

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** The Stop & Shop Supermarket Company LLC
   v. JPMorgan Chase Bank

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___ **I.** 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ **II.** 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

   ___ **III.** 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___ **IV.** 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___ **V.** 150, 152, 153.

   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.**

   _____

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**

   YES ☐     NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)**

   YES ☐     NO ☒

   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**

   YES ☐     NO ☒

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?**

   YES ☐     NO ☒

7. **DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).**

   YES ☐     NO ☒

   **A.** **IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?**

   EASTERN DIVISION ☐     CENTRAL DIVISION ☐     WESTERN DIVISION ☐

   **B.** **IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?**

   EASTERN DIVISION ☒     CENTRAL DIVISION ☐     WESTERN DIVISION ☐

   **(PLEASE TYPE OR PRINT)**
   **ATTORNEY'S NAME** Thomas J. Finn
   **ADDRESS** McCarter & English LLP, CityPlace I, 185 Asylum Street, Hartford, CT 06103
   **TELEPHONE NO.** (860)- 275-6700

   (AppendixC.wpd - 11/27/00)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| JPMORGAN CHASE BANK, | : | |
| | : | |
| Defendant. | : | NOVEMBER 17, 2004 |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1441 and 1446 and Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, the defendant, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A. ("Chase"), removes this action to the United States District Court for the District of Massachusetts, Eastern Division. Chase respectfully submits the following as grounds for removal:

1.      Chase is the defendant in a civil action commenced by the plaintiff, The Stop & Shop Supermarket Company, LLC ("Stop & Shop"), in the Commonwealth of Massachusetts, Superior Court Department of the Trial Court, Norfolk County.

2.      Chase received a copy of the Complaint and Jury Demand, dated October 21, 2004 ("Compliant"), from Stop & Shop, thereby receiving notification of the action.

3.      There is complete diversity of citizenship of the parties because:

    a.      Stop & Shop is a Delaware corporation with a principal place of business at 1385 Hancock Street, Quincy, Massachusetts;

    b.      Chase is a national banking association with a principal place of business in New York, New York; and

    c.      More than $75,000.00, exclusive of interest and costs, is in controversy in this action.

This Court would have original subject matter jurisdiction over this action under the provisions of 28 U.S.C. § 1332 if the action had originally been brought in federal court. Removal is therefore proper pursuant to 28 U.S.C. § 1441(a).

    4.      Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because none of the parties in interest properly joined and served as a defendant is a citizen of the Commonwealth of Massachusetts, the state in which the action was brought.

    5.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of the service or receipt by Chase of the Complaint filed by Stop & Shop and within one (1) year of the commencement of the action.

    6.      A true and correct copy of the Complaint is attached hereto as Exhibit A. No other process, pleadings, or orders have been served on Chase as of the date of this filing.

Dated: November 17, 2004
       Hartford, Connecticut

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
JPMORGAN CHASE BANK,

By: _____
    Thomas J. Finn
    (BBO # 561346)
    McCARTER & ENGLISH LLP
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103
    Tel: 860.275.6700
    Fax: 860.724.3397

## **CERTIFICATION**

This is to certify that on this 17th day of November, 2004, a copy of the foregoing was mailed, postage pre-paid, to:

Frank J. Bailey, Esq.
James W. Matthews, Esq.
Anthony L. DeProspo, Jr., Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, MA  02110

Counsel for Plaintiff

Thomas J. Finn

HARTFORD: 626573.01

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Civil Action No. 04-CV-12441 (NMG) |
| JP MORGAN CHASE BANK, | ) ) ) | |
| Defendant. | ) ) | |

### AFFIDAVIT OF ANTHONY L. DEPROSPO, JR., ESQ.

I, Anthony L. DeProspo, Jr., being duly sworn, depose and say:

1.     I am an associate with the law firm of Sherin and Lodgen LLP, counsel to Defendant The Stop & Shop Supermarket Company LLC.  I have personal knowledge of the facts recited in this affidavit.

2.     On November 29, 2004, I called Thomas J. Finn, attorney for JP Morgan Chase Bank ("Chase"), regarding Chase's Notice of Removal dated November 17, 2004 (the "Notice").  The Notice states as follows:

> Chase received a copy of the Complaint and Jury Demand, dated October 21, 2004 (the "Compliant") (sic), from Stop & Shop, thereby receiving notification of the action.

See Notice at ¶ 2.

3.     I asked Mr. Finn how he obtained a copy of the complaint.  Mr. Finn responded that someone from Stop & Shop "must have" sent it to Chase.  Mr. Finn then asked a female associate to join the conversation.  Neither one could explain how Chase obtain a copy of the complaint.  Mr. Finn informed me that someone from his office

would get back to me with more definitive information. As of December 6, 2004, no one from Mr. Finn's office has contacted me.

4.    Neither Stop & Shop nor its counsel have served Chase with the summons and/or complaint in the pending state court action, nor provided Chase's counsel with a courtesy copy of the complaint.

Signed under the pains and penalties of perjury this 6th day of December 2004.

Anthony L. DeProspo, Jr.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, | : | CIVIL ACTION NO.: |
| | : | 3:04 CV 1763 (AWT) |
|     Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| STOP & SHOP SUPERMARKET CO., | : | |
| | : | |
|     Defendant. | : | NOVEMBER 30, 2004 |

## MOTION TO CONSOLIDATE

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and Rule 7 of the Local Civil Rules of the United States District Court for the District of Connecticut, the plaintiff, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A. ("Chase"), hereby moves this Court for an order consolidated the above-captioned action with another action pending before this Court entitled, JPMorgan Chase Bank v. Ridgefield Properties LLC, et al., Civil Action No.: 3:02 CV 2266 (AWT) (the "Ridgefield Action"), for all purposes, including trial.

Chase respectfully submits that consolidation of the above-captioned action with the Ridgefield Action is appropriate pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The claims asserted in both actions arise out of the same underlying transaction and occurrence, involve the same parties, and involve common questions of law and fact. These actions should be consolidated in the interests of judicial economy and to avoid the unnecessary cost and duplicity in litigating two separate actions.

**ORAL ARGUMENT REQUESTED**

This Motion is based on all of the papers and records on file in this action, including Exhibit 1 attached hereto, the Memorandum of Law in Support of Motion to Consolidate, and on any oral argument or evidence that may be presented at the requested hearing of this Motion.

WHEREFORE, the plaintiff, JPMorgan Chase Bank, n/k/a JPMorgan Chase Bank, N.A., requests that the Court grant its Motion to Consolidate, dated November 30, 2004, and issue an order consolidating the action entitled, JPMorgan Chase Bank v. Ridgefield Properties LLC, et al., Civil Action No.: 3:02 CV 2266 (AWT), and the above-captioned matter for all purposes, including trial.

Dated:  November 30, 2004
        Hartford, Connecticut

RESPECTFULLY SUBMITTED,

THE PLAINTIFF,
JPMORGAN CHASE BANK,

By: _____
    Timothy S. Fisher
    Federal Bar No.: ct 05370
    Jason C. Welch
    Federal Bar No.: ct 23418
    McCARTER & ENGLISH LLP
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103
    Tel: 860.275.6700
    Fax: 860.724.3397

## CERTIFICATION

This is to certify that on this 30th day of November, 2004, a copy of the foregoing was mailed, postage pre-paid, to:


Lewis K. Wise, Esq.
Rogin, Nassau, Caplan,
    Lassman & Hirtle, LLC
CityPlace I, 22nd Floor
185 Asylum Street
Hartford, Connecticut 06103


_____
Timothy S. Fisher


HARTFORD: 627835.01